21 P.3d 890

Karen HAMILTON on behalf of Darrell
HAMILTON, deceased, Claimant–
Appellant,

v.

REEDER FLYING SERVICE, Employer,
and Idaho State Insurance Fund, Surety,
Defendants–Respondents.

No. 26079.

Supreme Court of Idaho,
Twin Falls, November 2000 Term.

Jan. 26, 2001.

Rehearing Denied April 13, 2001.

L. Clyel Berry, Chtd., Twin Falls, for appellant. L. Clyel Berry argued.

Hon. Alan G. Lance, Attorney General; Elam & Burke, P.A., Boise, for respondents. Ryan P. Armbruster argued.

KIDWELL, Justice.

Karen Hamilton, on behalf of Darrell Hamilton, deceased, appeals the Industrial Commission's finding that Darrell Hamilton's employment as an agricultural crop spraying pilot was exempt from worker's compensation coverage pursuant to I.C. § 72–212(9).

## I.

### FACTS AND PROCEDURAL HISTORY

The employer in this case, Reeder Flying Service, Inc. (Reeder), is an aviation company based out of the Twin Falls City Airport, in Twin Falls, Idaho. The main controversy in this case centers around the procedure followed by Reeder in procuring insurance for its pilots and whether this procedure conforms with the statutory exemption from worker's compensation available for agricultural spray pilots.

Reeder routinely followed the same procedure with the pilots that it employed for the spray season. It purchased a general liability policy on its agricultural pilots from John F. Throne and Company (Throne) through Stonebraker–McQuary Agency (Stonebraker) in Clarkston, Washington. The policy was procured under Master Policy No. AN6067Y by the Idaho Agricultural Aviation Association with Lloyd's of London as the policy's underwriters. The maximum death benefit available under the policy was $25,000.

Reeder hired Darrell Hamilton (Hamilton) as an agricultural spray pilot on July 19, 1993. Hamilton returned to work for Reeder for the 1994 spray season and again in the 1995 season until his death in July of 1995.

In the spring of 1995, the spray season in which Hamilton died, Reeder sent Hamilton's "Official Application for 1995 Pilot Accident Insurance" and a premium payment of $1040 to Stonebraker. Hamilton's insurance form application was dated April 20, 1995, and Karen Hamilton was listed as the beneficiary.

Stonebraker received the application from Reeder on May 15, 1995, and sent the application to Throne on the same day. Coverage was effective per the date stamp on the application, which, according to Stonebraker's company policy, would have been May 15, 1995, the day it was received.

Throne issued an Evidence of Insurance dated April 20, 1995, for coverage on Hamilton under the Lloyd's of London policy. According to the Evidence of Insurance, coverage on Hamilton remained in effect from May 15, 1995, through February 15, 1996. The Evidence of Insurance was returned to Stonebraker.

When Stonebraker received the Evidence of Insurance from Throne, it sent the original to Hamilton and copies of the document to

Reeder, the Industrial Commission and the State Insurance Fund. The Industrial Commission date stamped the document on June 1, 1995, indicating that the document was received by the Commission on that date.

The Industrial Commission approved the coverage for Hamilton on or about June 16, 1995, as referenced in the Evidence of Insurance. The Commission sent its certificate of approval to Stonebraker and Reeder.

Hamilton's first agricultural spraying flight for the 1995 season was on June 3, 1995, thirteen days before Reeder received approval from the Commission. On July 29, 1995, Hamilton was spraying a bean field west of Hagerman in a 1976 Grumman Ag Cat owned by Reeder. Hamilton was killed during the course and scope of his employment with Reeder when the plane he was flying crashed on the south side of the field. On July 24, 1996, Karen Hamilton, claimant, filed a worker's compensation complaint identifying Hamilton as her husband and seeking medical expenses, death benefits and burial expenses.

A hearing was held on April 19, 1999, where the sole issue to be decided was whether the claimant's employment was exempt from coverage. At the hearing, Claimant argued that a strict interpretation of the Idaho Code should be applied because the language of the code is unambiguous. According to Claimant, the code specifically provides that an employer shall be exempt, "if: the employer files with, and has written approval by, the industrial commission prior to employing a pilot . . . ." Because the Commission did not issue its approval for the exemption prior to Hamilton's first flight of the season, Claimant maintained that the exemption should not apply. Claimant asserted that the Industrial Commission allowed the agricultural spray pilots to stray from the procedure set forth in the code, thus establishing a twenty-seven-year-old custom based on an incorrect procedure. Finally, Claimant argued that compliance on the part of the defendant was feasible, and consequently, the defendant should be forced to comply.

The defendants (Reeder and the Idaho State Insurance Fund) denied liability, asserting that they complied with the intent of I.C. § 72–212(9) and thus were exempt. The defendants argued that Stonebraker and its insureds developed a twenty-seven-year-old custom and practice in which pilots are provided with insurance before their first flight of the season. According to this custom and practice, the exemption arises when the surety receives the insurance application and premium payment. Further, the Commission condoned the practice through acquiescence, as it repeatedly granted approval long after the pilots had begun the season.

The defendants argued that aerial operators, such as Reeder, would suffer if pilots were not allowed to make their first flight of the season until they received the Industrial Commission's approval. According to the defendants, the date of death or injury should be the determinative date, and in this case, the Commission's approval preceded the pilot's death.

Following the hearing, the Commission found that an industry custom and practice had developed between the members of the Idaho Agricultural Aviation Association and Stonebraker. According to industry practice, coverage becomes effective the day the insurance company, in this case Stonebraker, receives the application and premium payment. Aviation business owners did not wait to receive the Commission's certificate of approval before sending pilots on the first flight of the season, but rather understood the language to mean that once the policy was effective, pilots could begin flying because the exemption requirement had been met.

The Commission determined that an employer has met the exemption as long as it has obtained the insurance required under I.C. § 72–212(9) before the pilot makes his first flight of the season. This is an "administratively recognized concept" in accordance with the intent of the statute. The Commission concluded that the determinative date for purposes of approval under I.C. § 72–212(9) is the date of injury or death.

Hamilton filed a timely notice of appeal of the Industrial Commission's decision.

## II.

### STANDARD OF REVIEW

█ The Industrial Commission's conclusions of law are freely reviewable by this Court. *Taylor v. Soran Rest., Inc.*, 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998). Factual findings will be upheld if supported by substantial, competent evidence. *Id.* Constitutional issues and construction and application of legislative acts are questions of law subject to free review by this Court. *Struhs v. Prot. Tech.'s, Inc.*, 133 Idaho 715, 722, 992 P.2d 164, 171 (1999).

## III.

### ANALYSIS

**A. THIS COURT GIVES DEFERENCE TO THE INDUSTRIAL COMMISSION'S INTERPRETATION THAT THE EXEMPTION APPLIES SO LONG AS AN EMPLOYER OBTAINS INSURANCE BEFORE THE PILOT MAKES THE FLIGHT THAT RESULTS IN INJURY AND AS LONG AS THE COMMISSION GRANTS APPROVAL PRIOR TO THE DATE OF DEATH OR INJURY.**

█ This Court must apply a four-prong test when determining the appropriate level of deference to apply to an agency construction of a statute. *J.R. Simplot Co., Inc. v. Tax Comm'n*, 120 Idaho 849, 862, 820 P.2d 1206, 1219 (1991). The Court must first determine if the agency has been entrusted with the responsibility of administering the statute at issue. *Id.* Second, the agency's statutory construction must be reasonable. *Id.* Next, the Court must determine that the statutory language at issue does not expressly treat the precise question at issue. *Id.* The fourth prong of the test requires the Court to make a determination of whether any of the rationales underlying the rule of deference are present. *Id.*

#### 1. The agency is responsible for administering the statute.

█ An agency must be granted the authority to administer the statute before it is "impliedly clothed with the power to construe the law." *J.R. Simplot Co.*, 120 Idaho at 862, 820 P.2d at 1219 (citing *Kopp v. State*, 100 Idaho 160, 163, 595 P.2d 309, 312 (1979)).

The Industrial Commission correctly concluded that it is entrusted with the responsibility of administering worker's compensation law in Idaho. This responsibility is clearly set forth in I.C. §§ 72–201, –506, –508. The first phase of the four prong test is satisfied.

#### 2. The agency's statutory construction is reasonable.

█ The application of a statute is an aid to construction when the public relies on the application over a long period of time. *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 727, 733, 947 P.2d 400, 406 (1997).

The Industrial Commission determined that its interpretation of the statute was reasonable based on legislative intent and industry custom and practice. Pilots are covered by the requisite insurance before they begin flying, thus satisfying the legislative intent of providing pilot's coverage under an insurance policy, while minimizing the expense incurred by the employer. Additionally, the Industrial Commission allowed this practice to continue for twenty-seven years, thus giving employers the impression that the exemption was met so long as the policy was obtained before the first flight of the season and approval was granted before any injury was incurred.

An examination of the legislative history behind the exemption supports the Industrial Commission's conclusion. The legislative history indicates: "The purpose of this legislation is to exempt pilots of agricultural spraying and dusting planes from the Workmen's Compensation coverage provided they file with the Industrial Commission evidence of insurance coverage of an indicated minimum and secure the approval of the commission regarding the adequacy of coverage." Statement of Purpose H.B. 434 (1972). The statement of purpose does not mention any

stringent requirements that must be met in order for the exemption to apply, nor does it provide a procedure dictating the order in which the requirements must be met.

Additionally, the statute was amended in April of 2000[1] clarifying the procedural requirements necessary in order to trigger the exemption. Under the revised version of the statute, the exemption becomes effective on the date the Commission receives proof of coverage for the specified pilot, but no earlier than the date written approval of the policy was issued by the Commission.

For these reasons, the Industrial Commission's decision is reasonable and the second phase of the test is met.

### 3. The language of the statute does not expressly address the question at issue.

▆▆▆ An agency construction will not be followed if it contradicts the clear expression of the legislature. *Rim View Trout Co. v. Higginson,* 121 Idaho 819, 824, 828 P.2d 848, 853 (1992). In other words, if the language is unambiguous, an agency's interpretation contrary to the plain meaning of the statute will not be given deference. *Id.* at 824, 828 P.2d at 853. If the statutory language is clear and unambiguous, statutory construction is unnecessary and this Court need merely apply the statute. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.,* 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995). Ambiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous.

*Rim View Trout Co.,* 121 Idaho at 823, 828 P.2d at 852.

The pre-April 2000 version of Idaho Code § 72–212, "Exemptions from coverage" provided in part:

> None of the provisions of this law shall apply to the following employments unless coverage thereof is elected as provided in section 72–213, Idaho Code.
>
> (9) Pilots of agricultural spraying or dusting planes. Employment as a pilot of an aircraft, used to apply fertilizers and pesticides to agricultural crops, when actually operating an aircraft, shall be exempt from the provisions of the worker's compensation law, *if: the employer files with, and has written approval by, the industrial commission, prior to employing a pilot* for the purpose of engaging in the application of pesticides to agricultural crops by aircraft. . . .

I.C. § 72–212(9)(emphasis added).

The Industrial Commission found this statute to be ambiguous and capable of more than one interpretation. Specifically, the Commission noted that one interpretation is that the employer must file proof of insurance before employing a pilot. Another interpretation is that the employer must file proof of insurance *and* obtain approval of that insurance prior to employing a pilot. Additionally, the Commission found the language referring to the time frame in which the requirements must be met to be ambiguous. Under one reading, the requirements must be met before a pilot is employed to fly. A second interpretation is that the require-

1. I.C. § 72–212(9) currently reads: "Employment as a pilot of an aircraft, while actually operating an aircraft for the purpose of applying fertilizers or pesticides to agricultural crops, shall be exempt from the provisions of the worker's compensation law, provided that:
   (a) The industrial commission has issued to the agent submitting the policy, written approval of a policy of insurance that will provide benefits in an amount of not less than: twenty-five thousand dollars ($25,000) accidental death and dismemberment, ten thousand dollars ($10,000) medical expense payments, and five hundred dollars ($500) per month disability income for a minimum of forty-eight (48) months; and

   (b) Once the policy has been approved by the industrial commission, proof of coverage for the specified pilot has been filed with the commission prior to the pilot actually operating an aircraft.
   Provided however, the agent issuing the policy shall obtain approval of the policy of insurance, and proof of coverage for each pilot insured under the policy shall be filed with the commission, each calendar year. *The exemption shall be effective on the date the commission receives proof of coverage for the specified pilot,* but no earlier than the date written approval of the policy was issued by the commission." I.C. § 72–212(9) (emphasis added).

ments must be met before the pilot makes the first flight of the season.

We agree with the Commission that the statute is ambiguous. Specifically, the term "employment" as found in I.C. § 72–212(9) at the time this claim arose, is subject to more than one interpretation. This Court finds that the twenty-seven year custom implemented by the Industrial Commission, reflects that "employment" in the statute does not signify the moment upon which the employment contract is entered into, but rather is indicative of the time at which the pilot is actually in the air flying the plane. For purposes of construing the statute, each separate flight could be considered "employment." We do not address the issue of whether the exemption would still apply if the accident had occurred during one of the flights prior to the Commission's approval.

Because the language of the statute is ambiguous and does not specifically address what is meant by "employment," the third prong of the test is met.

#### 4. The rationales underlying the rule of deference are present.

The five rationales justifying judicial deference include: 1) situations when the agency's interpretation has been relied upon for a number of years; 2) when the agency's interpretation represents a practical interpretation; 3) when the statutory test has not been altered by the legislature in light of the interpretation; 4) when the interpretation is formulated contemporaneously with the enactment of the statute; and 5) when the interpretation involves an area of expertise developed by the agency. *Garner v. Horkley Oil,* 123 Idaho 831, 834 n. 1, 853 P.2d 576, 579 n. 1.

The fourth prong of the test can be easily satisfied. The facts before this Court indicate that the agency interpretation has been relied upon for over twenty-seven years, thus creating a well-established industry custom and practice. Additionally, interpreting worker's compensation statutes is an area of expertise belonging to the Industrial Commission, thus indicating that another policy reason supporting judicial deference has been met.

Because the four prongs of the judicial deference test are satisfied, the Industrial Commission decision will be given deference.

### C. HAMILTON IS NOT ENTITLED TO ATTORNEY FEES.

Hamilton is not the prevailing party in this instance and thus is not entitled to attorney fees. However, even if Hamilton were the prevailing party, her failure to provide argument in support of her request for attorney fees would preclude her from recovery. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 967 (1996)(finding that a party waives an issue cited on appeal if argument is lacking).

### IV.

### CONCLUSION

This Court finds that the four prongs of the judicial deference test have been satisfied, and thus the decision of the Industrial Commission is affirmed. The exemption for agricultural spray pilots codified in I.C. § 72–212(9) as it read prior to April of 2000 is triggered so long as the employer obtains the requisite insurance and the Commission grants approval prior to the date of death or injury. Costs are awarded to respondent.

Chief Justice TROUT, Justices SCHROEDER and WALTERS, and Senior District Judge McKEE, concur.