48 P.3d 659

**JEN–RATH CO., INC., an Idaho corporation, dba Jensen Homes, Plaintiff–Respondent,**

v.

**KIT MANUFACTURING COMPANY, an Idaho corporation, Defendant Appellant.**

No. 26941.

Supreme Court of Idaho, Boise, February 2002 Term.

June 3, 2002.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for appellant. Charles C. Gill argued.

White, Peterson, Morrow, Gigray, Rossman, Nye & Rossman, P.A., Nampa, for respondent. Eric S. Rossman argued.

KIDWELL, Justice.

Jen–Rath Co., Inc., dba Jensen Homes, (Jen–Rath) brought this action against KIT Manufacturing Company (KIT) alleging, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing related to KIT's cancellation of an agreement by which Jen–Rath was an exclusive dealer of KIT's manufactured homes. The case was submitted to a jury solely on those two issues, based upon Jen–Rath's claims that KIT failed to provide reasonable notification of its intention to terminate the parties' business relationship. The jury found that KIT had breached the contract, including the implied covenant of good faith and fair dealing, and awarded Jen–Rath $255,000 in damages. KIT has appealed, and we affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The following was adapted, in part, from the statement of facts contained in the district court's "Order On Defendant's Motion For Summary Judgment...." KIT is a corporation with its principal offices in Caldwell, Idaho. KIT manufactures recreational vehicles and manufactured homes. Jen–Rath has continuously operated a manufactured home dealership in Nampa at one location or another since approximately 1973. Jen–Rath was in business in Fruitland for a short time in the early 1990's and then continuously after 1994.

Over the years, Jen–Rath has been a dealer of many different manufacturers' homes, and Jensen Homes was a non-exclusive dealer of KIT homes in the 1970's, prior to Jen–Rath's incorporation. Sometime in the late 1970's, Jen–Rath terminated its relationship with KIT, but in 1982 Jen–Rath applied to be a KIT dealer once again. Although there was no written dealership or distributorship agreement between the parties at any time, Jen–Rath was a dealer of KIT homes for approximately sixteen years. By oral agreement, Jen–Rath was KIT's exclusive dealer in Canyon County after 1986 and its exclusive dealer in Payette County after 1994. During the time that Jen–Rath was an exclusive dealer, it typically carried a large KIT inventory, at times worth nearly one million dollars.

In 1997, KIT determined that Jen–Rath's market share in Nampa and Fruitland was

low and that its customer service satisfaction rating was dropping to unacceptable levels. In January of 1998, KIT approached Jen–Rath with a proposal to increase sales. KIT made the proposal in a series of letters and meetings between December of 1997 and April of 1998. KIT proposed, among other things, moving the existing Nampa and Fruitland sales lots to new locations within the respective cities, opening a third sales location in Boise, and creating new "environmental" displays at all sales locations in order to display the homes as they would appear at a home site. On April 17, 1998, KIT sent Jen–Rath a letter that outlined many of the details of KIT's proposal and that concluded with the sentence "If I do not hear from you, we will need to go forward in another manner."

During this period of time, in January or February of 1998, Jen–Rath was in negotiations with Moduline Industries, Inc. (Moduline) regarding the possibility of being a dealer of Moduline manufactured homes. In March of 1998, Jen–Rath ordered Moduline products, and by April of 1998, Jen–Rath had received three Moduline homes at its Nampa sales location. On April 22, 1998, in a meeting with KIT, Jen–Rath indicated that it was unwilling to implement KIT's new proposals. KIT sent a letter to Jen–Rath, dated May 6, 1998, which recounted the various discussions between the two and informed Jen–Rath that KIT was terminating their business relationship. The letter stated that KIT would continue to honor retail orders executed and delivered to KIT by July 31, 1998, and that KIT would continue to supply parts and service as needed on those homes already sold. At least once after June 16, 1998, Jen–Rath made a demand that KIT repurchase its unsold inventory, but KIT refused.

At some point, Jen–Rath arranged to be a dealer of manufactured homes made by Guerdon Homes (Guerdon). Although there is some dispute as to when this occurred—KIT claims that it was as early as April of 1998—it is undisputed that it occurred no later than August of 1998. After September of 1998, Jen–Rath discontinued ordering Moduline homes.

When KIT terminated the relationship, Jen–Rath still had an inventory of KIT homes worth a wholesale value of approximately $750,000. Jen–Rath had been unable to liquidate that inventory by September of 1998, when KIT opened a dealership in Nampa, in which it was a seventy percent owner.

On November 27, 1998, Jen–Rath filed a complaint and demand for jury trial against KIT, alleging causes of action for breach of contract; breach of the implied duty of good faith and fair dealing; breach of a fiduciary duty; and fraud, constructive fraud and/or intentional misrepresentation. On August 10, 1999, Jen–Rath filed an amended complaint, adding allegations of a "Violation of the Idaho Consumer Protection Act."

By the time the case went to trial, Jen–Rath's arguments were reduced to the theory that KIT had failed to give Jen–Rath reasonable notice of the termination of the contract, and the jury was instructed only as to Jen–Rath's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The jury found, by special verdict, that KIT had breached the exclusive dealership contract with Jen–Rath, and that KIT had "breached the implied covenant of good faith or fair dealing with respect to its performance under the terms of the exclusive dealership contract." The jury also found that Jen–Rath had not breached or anticipatorily repudiated the contract prior to KIT's breach and that Jen–Rath had not breached the implied covenant of good faith and fair dealing. The jury fixed Jen–Rath's damages at $255,000. The district court's judgment on the jury's verdict was filed on May 11, 2000.

On appeal, KIT has asked this Court to reverse the district court's entry of judgment, arguing that the district court erred by denying its motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for a new trial. Specifically, KIT argues that, under the Idaho statutes embodying the Uniform Commercial Code, it provided Jen–Rath with reasonable notice of the termination of the dealership agreement as a matter of law. KIT also argues that the district court erred by failing to compel Jen–Rath to produce a written dealership agree-

ment entered into between Jen–Rath and Guerdon Homes, and by admitting KIT's Policy Manual and Procedure Manual into evidence.

## II.

## STANDARD OF REVIEW

■ The district court has wide discretion to grant or refuse to grant a new trial and, on appeal, this Court will not disturb a district court ruling absent a showing of manifest abuse of that discretion. *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 780, 25 P.3d 88, 93 (2001).

■ In reviewing a decision to grant or deny a motion for a directed verdict or a judgment notwithstanding the verdict, this Court applies the same standard as that applied by the trial court when originally ruling on the motion. *Olson v. EG & G Idaho, Inc.*, 134 Idaho 778, 781, 9 P.3d 1244, 1247 (2000). Ordinarily, when ruling on a motion for a directed verdict or a judgment notwithstanding the verdict, the court must determine whether there is substantial evidence to support the jury's verdict. *Id.* However, in this case, the appellants have only challenged the district court's denial of its motions based upon issues of law. When the issue is one of law, this Court has free review. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999).

## III.

## ANALYSIS

### A. It Cannot Be Said That KIT Provided Reasonable Notification Of The Impending Termination As A Matter Of Law.

The parties do not dispute that Article 2 of the Uniform Commercial Code (UCC), codified as Title 28, chapter 2 of the Idaho Code, applies to this case, because the agreement between Jen–Rath and KIT was a contract for the sale of goods. I.C. §§ 28–2–105(1), –106. Additionally, it is undisputed on appeal that the UCC statute of frauds is inapplicable to bar enforcement of the contract. I.C. § 28–2–201(2), (3)(b)-(c).

KIT argues that the district court erred in denying its motion for a directed verdict and its motion for a judgment notwithstanding the verdict because KIT gave reasonable notification as a matter of law. Additionally, KIT argues that the district court improperly stated the law when it declined to instruct the jury that KIT needed to provide only such notification as necessary to allow Jen–Rath to find a substitute supply of products. Specifically, KIT argues that under the pertinent gap-filling provisions of the UCC, I.C. § 28–2–309(3), and the "Official Comments" thereto, notification is reasonable as a matter of law if the non-terminating party is able to make arrangements for alternative performance prior to the effective date of the termination. KIT contends that Jen–Rath was able to purchase homes from both Moduline and Guerdon as early as April of 1998. Consequently, KIT argues, Jen–Rath was able to make alternative arrangements and received reasonable notification as a matter of law.

Because the contract between the parties did not address the amount of time the notification should have given, the gap-filling provisions of the UCC supply the missing terms. *See* I.C. § 28–1–102(3)–(4); *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 180–81, 595 P.2d 709, 714–15 (1979). The parties' disagreement centers on the interpretation and application of I.C. § 28–2–309, which provides, in relevant part:

(2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

(3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

I.C. § 28–2–309(2)–(3). There is no dispute that the contract between the parties called for successive performances, was indefinite in duration, and endured for a reasonable time such that KIT could terminate it consistent with subsection (2). The dispute only concerns the *way* in which KIT terminated the

contract, and the only factual issue presented to the jury in support of the breach claims was whether KIT gave "reasonable notification" under subsection (3).

 This Court does not need to look outside the language of the statute to resolve this case. Where the language of a statute is clear and unambiguous, statutory construction is unnecessary, and this Court need only determine the application of the words to the facts of the case at hand. *Hamilton v. Reeder Flying Serv.*, 135 Idaho 568, 571, 21 P.3d 890, 893 (2001). "A statute is ambiguous where the language is capable of more than one construction." *Struhs v. Protection Techs. Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999). "Ambiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous." *Hamilton,* 135 Idaho at 571, 21 P.3d at 893. "The interpretation should begin with an examination of the literal words of the statute, and this language should be given its plain, obvious, and rational meaning." *Williamson v. City of McCall (In re Williamson),* 135 Idaho 452, 455, 19 P.3d 766, 769 (2001).

 Idaho Code section 28–2–309(3) provides that a party wishing to terminate a contract must provide notification that is "reasonable." This section plainly and simply requires that the notice given must be reasonable in all of its characteristics, not the least of which is the *time* between the notice and the effective date of the termination. Under I.C. § 28–1–204(2), which provides definitions generally applicable to the entire UCC, "[w]hat is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." *See also Anderson & Nafziger,* 100 Idaho at 181, 595 P.2d at 715. Consequently, what constitutes "reasonable notification" under I.C. § 28–2–309(3) also depends on the nature, purpose, and circumstances of the notification. The reasonableness of a given action is generally a question for the finder of fact. *See Anderson & Nafziger,* 100 Idaho at 181, 595 P.2d at 715 (reasonableness of time of delivery of goods when no time of delivery was stated); *Thiel v. Stradley,* 118 Idaho 86, 88,

794 P.2d 1142, 1144 (1990) (reasonable time within which to bring a motion to set aside a void judgment); *Kolouch v. Kramer,* 120 Idaho 65, 69, 813 P.2d 876, 880 (1991) (reasonable use of an easement).

KIT's argument hinges on its interpretation of the "Official Comments" to I.C. § 28–2–309. The Comments are not authoritative, because they were not contained in the session law that adopted I.C. § 28–2–309. *See* 1967 Sess. Laws ch. 161. However, to the extent that they are persuasive, the Comments are more useful in identifying the *purpose* for providing notification of a termination, rather than in providing a definition of "reasonable notification":

8. Subsection (3) recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contractual relationship as will give the other party reasonable time to seek a substitute arrangement.

Comment 8 to UCC Section 2–309. Comment 8 notes that the primary purpose of giving reasonable notification is to allow the non-terminating party time to make substitute arrangements. The Comment does not indicate an intention on the part of the drafters of the UCC to limit the fact-finder's ability to consider the nature or circumstances of the notification.

 The issues of how long it would take Jen–Rath to liquidate its remaining KIT inventory and make the transition to a new manufacturer were relevant to the jury's inquiry as to whether the notification given was reasonable. The jury could reasonably conclude that the notice given by KIT was unreasonable in light of the time it would take Jen–Rath to liquidate its remaining inventory and to fully transition to using a new manufacturer.

Consequently, even assuming Jen–Rath did make arrangements to obtain Moduline and Guerdon products prior to the effective date of KIT's termination, the district court did not err in denying KIT's motion for a directed verdict and KIT's motion for judgment notwithstanding the verdict, because it cannot be said that KIT gave Jen–Rath rea-

sonable notification as a matter of law. For the same reasons, KIT's argument that the district court improperly instructed the jury also fails.

KIT also argues that the district court erred in several respects with regard to Jen–Rath's claim that KIT breached the implied covenant of good faith and fair dealing. The jury found KIT liable for both a breach of the UCC duty to provide reasonable notification and a breach of the implied covenant of good faith and fair dealing, based upon the same instances of conduct. Either theory supports the jury's award of damages. Consequently, this Court's decision to affirm the verdict regarding the UCC duty is sufficient to affirm the jury's award and the district court's denial of KIT's motions, and we do not address KIT's assignments of error regarding the implied covenant of good faith and fair dealing.

**B. The District Court Did Not Abuse Its Discretion By Denying KIT's Motion To Compel Production Of The Agreement Between Jen–Rath And Guerdon.**

KIT argues that its motion for a new trial should have been granted, because the district court erred by denying its motion to compel production of a dealership agreement between Jen–Rath and Guerdon. KIT alleges that the agreement was executed prior to the effective date of the termination of the agreement between KIT and Jen–Rath. KIT argues that the contract between Jen–Rath and Guerdon was likely to lead to admissible evidence regarding Jen–Rath's own admission or belief that 85 days constitutes reasonable notification of termination. KIT desired to use that information to impeach the testimony of Jen–Rath's officer to the effect that, to be reasonable, notification should have been at least six months before termination. Additionally, KIT argues that the agreement was likely to show that Jen–Rath had access to substitute Guerdon products prior to the termination date.

Control of discovery is within the discretion of the trial court. *Avila v. Wahlquist,* 126 Idaho 745, 749, 890 P.2d 331, 335 (1995). The initial question of relevancy of evidence is a question of law over which this Court exercises free review. *State v. Hairston,* 133 Idaho 496, 502, 988 P.2d 1170, 1176 (1999). If any notification provisions existed in the Guerdon dealership contract, and if they provided for some time equal to or less than eighty-five days, they would be logically relevant, because their introduction would have some tendency to make the existence of the fact that eighty-five days is reasonable notification more probable than without them. *See* I.R.E. 401. However, as noted by the district court in its order on KIT's motion for directed verdict or judgment notwithstanding the verdict, the two contracts were initiated under very different circumstances. Jen–Rath was arguably in a much weaker bargaining position with Guerdon than it had been with KIT, having been recently cancelled by KIT and seeking replacement products. The agreement between Jen–Rath and KIT was the product of a sixteen-year relationship, much of which was exclusive. Additionally, KIT impeached Jen–Rath's testimony regarding reasonableness by using evidence that the Moduline agreement was terminated without notice. Therefore, the probative value of the evidence allegedly contained in the Guerdon contract was minimal and was cumulative of the evidence regarding termination of the Moduline agreement. Although the district court appears to have held that the evidence was *irrelevant,* the court had the discretion to rule that the evidence was excludable, even if relevant, under I.R.E. 403.

Additionally, the district court was of the opinion, expressed in its order on KIT's motion for directed verdict or judgment notwithstanding the verdict, that the agreement between Jen–Rath and Guerdon was confidential, proprietary information that should not be disclosed to KIT, because KIT and Guerdon are competitors in the same industry in the same location. That conclusion is supported by substantial and competent evidence in the record, and the district court had discretion to issue a protective order barring discovery of the confidential contract under I.R.C.P. 26(c) if Jen–Rath had made a motion.

We hold that the district court did not abuse its discretion by denying KIT's motion to compel. Consequently, the district court did not abuse its discretion by denying KIT's motion for a new trial based upon this issue.

## IV.

## ATTORNEY FEES ON APPEAL

Jen–Rath seeks attorney fees on appeal pursuant to I.C. § 12–120(3), which authorizes an award of attorney fees to the prevailing party in any civil action to recover on a "contract relating to the purchase and sale of goods." Because Jen–Rath is the prevailing party on appeal and because this action is one to recover on a contract relating to the purchase and sale of goods, Jen–Rath is awarded attorney fees on appeal.

## V.

## CONCLUSION

In deciding whether reasonable notification has been given for the termination of a contract of unspecified duration, the inquiry is not limited to whether the non-terminating party entered into agreements for substitute performance prior to the effective date of the termination. The fact finder may consider the nature, purpose, and surrounding circumstances of the notification in determining its reasonableness. Additionally, the district court did not err in denying KIT's motion to compel discovery of the Guerdon contract. The district court therefore did not err in denying KIT's motions for a directed verdict and a judgment notwithstanding the verdict. The decision of the district court is affirmed. Attorney fees and costs on appeal are awarded to Jen–Rath.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN, concur.