63 P.3d 450

**Jerry Lee "Moe" INAMA, personally and M.O.E., an Idaho Corporation, Plaintiffs–Appellants,**

v.

**BOISE COUNTY, a political subdivision of the State of Idaho, by and through its BOARD OF COMMISSIONERS, Defendant–Respondent.**

No. 27595.

Supreme Court of Idaho, Boise, December 2002 Term.

Jan. 24, 2003.

---

Ratliff Law Offices, Chtd., Mountain Home, for appellants. Terry S. Ratliff, Mtn Home, argued.

Naylor, Hales & McCreedy, P.C., Boise, for respondent. Kirtlan G. Naylor, Boise, argued.

EISMANN, Justice.

This is an appeal from the grant of summary judgment dismissing the Plaintiffs' claim against Boise County for the loss of their front-end loader that was destroyed while the county was using it, without Plaintiffs' permission, to clear roads during a natural disaster caused by flooding and mudslides. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

During the latter part of December 1996, floods and mudslides plagued Boise County due to a series of fierce winter storms. On December 25, 1996, the chairman of the Boise County Board of County Commissioners declared an emergency pursuant to Idaho Code § 46–1011.[1] That declaration of emergency was reduced to writing by resolution adopted on December 30, 1996.[2]

1. The statute provides as follows:

 **46–1011. Local disaster emergencies.**—(1) A local disaster emergency may be declared only by a mayor or chairman of the county commissioners within their respective political subdivisions. It shall not be continued or renewed for a period in excess of seven (7) days except by or with the consent of the governing board of the political subdivision. Any order or proclamation declaring, continuing, or terminating a local disaster emergency shall be given prompt and general publicity and shall be filed promptly with the local county recorder.

 (2) The effect of a declaration of a local disaster emergency is to activate the response and recovery aspects of any and all applicable local or intergovernmental disaster emergency plans and to authorize the furnishing of aid and assistance thereunder.

 (3) No intergovernmental agency or official thereof may declare a local disaster emergency, unless expressly authorized by the agreement pursuant to which the agency functions. However, an intergovernmental disaster agency shall provide aid and services in accordance with the agreement pursuant to which it functions.

2. The resolution provided as follows:

 WHEREAS, winter storms are making travel difficult and electric power is off in the Eastern part of the County, also telephone service is off in parts of the County;

 WHEREAS, it appears to the Boise County Board of Commissioners that:

 1. An emergency is in existence in Boise County,

 2. An emergency exists which local County and private resources may not be adequate to handle.

 NOW, THEREFORE, be it resolved and declared by the Boise County Board of Commissioners at 4:18 p.m. the 25th day of December, 1996, as follows:

 1. An emergency exists within Boise County resulting from winter storms;

 2. Such emergency may require outside emergency assistance to supplement local ef-

On December 27, 1996, the Governor issued a proclamation declaring a disaster emergency in Boundary County, Idaho, as a result of severe winter storms creating excessive snowfall and ice conditions throughout the county. The proclamation stated that the Governor declared a state of extreme emergency as described in Idaho Code § 46–601(a)(2) [3] and a state of disaster emergency as described in Idaho Code § 46–1008(2).[4] It also stated, "That the nature of the emergency is the occurrence and imminent threat of injury to people and property due to damages caused from accumulated snow and ice." On December 31, 1996, the Governor amended the proclamation to include Boise County within its provisions.

As a result of the storms in Boise County, heavy flooding and mudslides closed the highway between Banks and Lowman. On December 30, 1996, Boise County and the plaintiff Inama entered into an agreement to use Inama's dump truck to haul debris from the flooding and mudslides. Inama then hired David Stricker to drive the truck.

Beginning on December 31, 1996, Stricker began driving the dump truck under the direction of the Boise County Road Superintendent and a state employee.

On January 1, 1997, the Road Superintendent needed a loader to clear debris. Stricker told him about Inama's front-end loader, but added that he had no authority to use it. The Road Superintendent told Stricker to get the loader and use it to clear debris from several creeks. Stricker did as he was told. Inama was not present, did not know that his loader was going to be used by the County, and did not consent to that use.

After Stricker finished using the loader to clear debris from the creeks, the Road Superintendent told him to take the loader to Highway 17 to clear mudslides so that a crew from the electric company could get through to restore power to Garden Valley. Stricker again did as he was instructed. As Stricker was working on the mudslide, the loader developed a hydraulic leak and became inoperable. Stricker parked it and left with the electric company crew to obtain repair mate-

forts and to avert the impact of the emergency.

**ADOPTED** as a Resolution at the regular meeting of Boise County on the 30th day of December, 1996, upon a motion made by Commissioner Dyer, seconded by Commissioner Raper.

Commissioner Dyer was the Chairman of the Board of County Commissioners.

3. The statute provides as follows:

**46–601. Authority of governor.**—(a) The governor shall have the power in the event of a state of extreme emergency to order into the active service of the state, the national guard, or any part thereof, and the organized militia, or any part thereof, or both as he may deem proper.

"State of extreme emergency" means: ... (2) the duly proclaimed existence of conditions of extreme peril to the safety of persons and property within the state, or any part thereof, caused by such conditions as air pollution, fire, flood, storm, epidemic, riot or earthquake, insurrection, breach of the peace, which conditions by reason of their magnitude are or are likely to be beyond the control of the services, personnel, equipment and facilities of any county, any city, or any city and county.

4. The statute provides as follows:

**46–1008. The governor and disaster emergencies.**—... (2) A disaster emergency shall

be declared by executive order or proclamation of the governor if he finds a disaster has occurred or that the occurrence or the threat thereof is imminent. The state of disaster emergency shall continue until the governor finds that the threat or danger has passed, or the disaster has been dealt with to the extent that emergency conditions no longer exist, and when either or both of these events occur, the governor shall terminate the state of disaster emergency by executive order or proclamation; provided, however, that no state of disaster emergency may continue for longer than thirty (30) days unless the governor finds that it should be continued for another thirty (30) days or any part thereof. The legislature by concurrent resolution may terminate a state of disaster emergency at any time. Thereupon, the governor shall issue an executive order or proclamation ending the state of disaster emergency. All executive orders or proclamations issued under this subsection shall indicate the nature of the disaster, the area or areas threatened, the area subject to the proclamation, and the conditions which are causing the disaster. An executive order or proclamation shall be disseminated promptly by means calculated to bring its contents to the attention of the general public and unless the circumstances attendant upon the disaster prevent or impede, be promptly filed with the bureau of disaster services, the office of the secretary of state and the office of the recorder of each county where the state of disaster emergency applies.

rials and hydraulic fluid. While they were gone, a massive mudslide swept the loader into the South Fork of the Payette River, destroying the loader.

On March 10, 1998, Inama filed this action against Boise County seeking to recover the value of his front-end loader and other damages. Ultimately, Boise County filed a motion for summary judgment seeking to have this action dismissed on the ground that it was immune from liability under Idaho Code § 46–1017. The district court granted that motion and dismissed this action. Inama then appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in ruling that Idaho Code § 46–1017 granted immunity to Boise County for the loss of Inama's loader?

B. Did the district court err in ruling that neither the United States Constitution nor the Idaho Constitution required Boise County to compensate Inama for the loss of his loader?

C. Did the district court correctly rule that Boise County is not required to compensate Inama for the loss of his loader under the theory of conversion?

D. Is either party entitled to attorney fees on appeal?

## III. ANALYSIS

 In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

## A. Did the District Court Err in Ruling that Idaho Code § 46–1017 Granted Immunity to Boise County for the Loss of Inama's Loader?

 The district court held that Boise County was immune from liability in this case pursuant to Idaho Code § 46–1017,[5] which is part of the Idaho Disaster Preparedness Act of 1975. IDAHO CODE §§ 46–1001 *et seq.* (1997). Section 46–1017 was intended by the legislature to codify a version of the doctrine of public necessity. *Marty v. State*, 117 Idaho 133, 786 P.2d 524 (1989). Insofar as is relevant in this case, the statute provides that no political subdivision of the state, "engaged in any ... disaster relief activities, acting under a declaration by proper authority ... while complying or attempting to comply with this act ..., shall be liable for ... damage to property as a result of such activity." It is undisputed that Boise County is a subdivision of the state and that while using Inama's loader the County was engaged in disaster relief activities, was acting under a declaration of disaster emergency, and was complying or attempting to comply with the Idaho Disaster Preparedness Act of 1975. Inama does not

5. The statute provides as follows:

46–1017. **Immunity.**—Neither the state nor any political subdivision thereof nor other agencies, nor, except in cases of wilful misconduct, the agents, employees or representatives of any of them engaged in any civil defense or disaster relief activities, acting under a declaration by proper authority nor, except in cases of wilful misconduct or gross negligence, any person, firm, corporation or entity under contract with them to provide equipment or work on a cost basis to be used in disaster relief, while complying with or attempting to comply with this act or any rule or regulation promulgated pursuant to the provisions of the act, shall be liable for the death of or any injury to persons or damage to property as a result of such activity. The provisions of this section shall not affect the right of any person to receive benefits to which he would otherwise be entitled under this act or under the workmen's compensation law or under any pension law, nor the right of any such person to receive any benefits or compensation under any act of congress.

dispute those facts. He argues, however, that the scope of immunity granted by § 46–1017 is narrowed by Idaho Code § 46–1012.[6]

Inama bases his argument upon subsection (3) of the statute, which provides, "Compensation for property shall be only if the property was commandeered or otherwise used in coping with a disaster emergency and its use or destruction was ordered by the governor or his representative." He argues that the scope of immunity provided by Idaho Code § 46–1017 should be no broader than the scope of compensation allowed under Idaho Code § 46–1012. Thus, he asserts that because the governor or his representative [7] did not order the use or destruction of the loader, he is not entitled to compensation under § 46–1012 and therefore the County should not have immunity under § 46–1017.

 The interpretation of a statute is a question of law over which we exercise free review. *Gooding County v. Wybenga*, 137 Idaho 201, 46 P.3d 18 (2002). It must begin with the literal words of the statute, *Thomson v. City of Lewiston*, 137 Idaho 473, 50 P.3d 488 (2002); those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 25 P.3d 850 (2001). If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. *Hansen v. State Farm*

*Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987). Unless the result is palpably absurd, we must assume that the legislature means what is clearly stated in the statute. *Miller v. State*, 110 Idaho 298, 715 P.2d 968 (1986). If the statute as written is socially or otherwise unsound, the power to correct it is legislative, not judicial. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987). A statute is ambiguous where the language is capable of more than one reasonable construction. *Jen–Rath Co., Inc. v. Kit Mfg. Co.*, 137 Idaho 330, 48 P.3d 659 (2002). Ambiguity is not established merely because differing interpretations are presented to the Court; otherwise, all statutes would be considered ambiguous. *Id.* If the statute is ambiguous, then it must be construed to mean what the legislature intended for it to mean. *Miller v. State*, 110 Idaho 298, 715 P.2d 968 (1986). To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history. *Lopez v. State, Indus. Special Indem. Fund*, 136 Idaho 174, 30 P.3d 952 (2001); *Adamson v. Blanchard*, 133 Idaho 602, 990 P.2d 1213 (1999).

Idaho Code § 46–1012(3) is clear and unambiguous. Compensation for property damaged, lost, or destroyed can be recovered under the Idaho Disaster Preparedness Act

**6.** That statute provides as follows:

 **46–1012. Compensation.**—(1) Each person within this state shall conduct himself and keep and manage his affairs and property in ways that will reasonably assist and will not unreasonably detract from the ability of the state, other political subdivisions, and the public to successfully meet disaster emergencies. This obligation includes appropriate personal service and use or restriction on the use of property in time of disaster emergency. This act neither increases nor decreases these obligations but recognizes their existence under the constitution and statutes of this state. Compensation for services or for the taking or use of property shall be only to the extent that obligations recognized herein are exceeded in a particular case and then only to the extent that the claimant may not be deemed to have volunteered his services or property without compensation.

 (2) No personal services may be compensated by the state or any subdivision or agency thereof, except pursuant to statute or local law or ordinance.

 (3) Compensation for property shall be only if the property was commandeered or otherwise used in coping with a disaster emergency and its use or destruction was ordered by the governor or his representative.

 (4) Any person claiming compensation for the use, damage, loss, or destruction of property under this act shall file a claim therefor with the bureau in the form and manner the bureau provides.

 (5) Unless the amount of compensation on account of property damaged, lost, or destroyed is agreed upon between the claimant and the bureau, the amount of compensation shall be calculated in the same manner as compensation due for taking of property pursuant to the condemnation laws of this state.

**7.** Because it has not been raised in this case, we express no opinion on the scope of subsection (3) of Idaho Code § 46–1012, nor do we express any opinion as to whether Inama is entitled to compensation under that statute.

of 1975 only if its use or destruction was ordered by the governor or his representative. Idaho Code § 46–1017 is likewise clear and unambiguous. The statute as written does not limit the scope of immunity to damages compensable under § 46–1012. Therefore, the District Court did not err in holding that Idaho Code § 46–1017 granted Boise County immunity from damages resulting from the loss of Inama's loader.

**B. Did the District Court Err in Ruling that neither the United States Constitution nor the Idaho Constitution Required Boise County to Compensate Inama for the Loss of His Loader?**

 In his brief, Inama lists as an assignment of error: "Whether the District Court properly ruled as a matter of law, that Boise County was not obligated to compensate [Inama] for the loss of his front end loader pursuant to the United States and Idaho Constitutions." He presented no argument or authority, however, regarding the United States Constitution. In the argument portion of his brief, Inama only mentioned the United States Constitution once in passing. He quoted a portion of his argument to the district court, and that argument included the statement, "We probably do need to do some additional briefing on that, but, to me, this Idaho constitution, the 5th and 14th Amendments create an exception to the immunity." We will not consider issues cited on appeal that are not supported by argument and propositions of law. *Farnworth v. Ratliff*, 134 Idaho 237, 999 P.2d 892 (2000); *Highland Enter., Inc. v. Barker*, 133 Idaho 330, 986 P.2d 996 (1999) (a one-sentence statement that an award of punitive damages violates due process is hardly sufficient to constitute argument); *Idaho State Ins. Fund v. Van Tine*, 132 Idaho 902, 980 P.2d 566 (1999) (assertion that a particular statutory construction would violate due process will not be considered where it is not supported by argument and authority). In his briefing, Inama expressly stated that he is not contending that Idaho Code § 46–1017 is unconstitutional. He did not present any argument or authority regarding the application of the United States Constitution to the facts in this case. Therefore, we will not consider that issue on appeal.

 With respect to the Idaho Constitution, Inama argues that he is entitled to compensation for inverse condemnation pursuant to Article I, § 14, which provides, insofar as is relevant, as follows: "Private property may be taken for public use, but not until a just compensation, to be as ascertained in the manner prescribed by law, shall be paid therefore." In *Marty v. State*, 117 Idaho 133, 786 P.2d 524 (1989), this Court held that if Idaho Code § 46–1017 grants immunity from liability regarding a particular loss, then compensation for inverse condemnation cannot be awarded under Article I, § 14.

Whether the landowners are entitled to compensation for inverse condemnation will first depend on whether their property was permanently damaged. . . .

In the event permanent damage is shown by the landowners, the immunity provisions of I.C. § 46–1017 must be applied. This immunity exists only when the state, its political subdivisions or other agencies were "acting under a declaration by proper authority." Here, the board of county commissioners did not declare an emergency until June 12, 1984. The governor declared an emergency on June 14, 1984. The emergency declared by the county commissioners was for a period of seven days. I.C. § 46–1011(1). The emergency declared by the governor was for thirty days, unless extended by further declaration. I.C. § 46–1008(2). Whether the actions of the governmental agencies were immunized by I.C. § 46–1017 will depend on whether they were taken during these periods.

117 Idaho at 144, 786 P.2d at 535. Therefore, because Idaho Code § 46–1017 grants the County immunity in this case, Inama is not entitled to recover compensation for inverse condemnation. The district court did not err in dismissing that claim.

**C. Did the District Court Correctly Rule that Boise County Is Not Required to Compensate Inama for the Loss of His Loader Under the Theory of Conversion?**

 Inama contends that Boise County is liable for damages under the tort of conver-

sion. The scope of immunity granted by Idaho Code § 46–1017 is not limited to particular theories of tort liability. It states broadly, "Neither the state nor any political subdivision thereof … shall be liable for … damage to property as a result of such activity." Boise County has immunity under the statute whether Inama's claim is characterized as inverse condemnation or conversion. Therefore, the district court did not err in dismissing Inama's claim for conversion.

## D. Is Either Party Entitled to Attorney Fees on Appeal?

Both parties request attorney fees on appeal pursuant to Idaho Code § 12–117(1), which provides:

> **12–117. Attorney's fees, witness fees and expenses awarded in certain instances.**—(1) Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

Inama is not entitled to attorney fees because he is not the prevailing party. *Thomson v. City of Lewiston*, 137 Idaho 473, 50 P.3d 488 (2002); IDAHO CODE § 12–117(1) (2002 Supp.). We decline to award attorney fees to Boise County because we do not find that Inama appealed without a reasonable basis in fact or law.

## IV. CONCLUSION

The judgment of the district court is affirmed. Costs, but not attorney fees, are awarded on appeal to Boise County.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL and Justice Pro Tem SCHWARTZMAN concur.