Julius EPSTEIN, Plaintiff,

v.

Stanley RESOR, Secretary of the Army, Department of the Army, Department of Defense, Defendants.

No. 48962.

United States District Court
N. D. California.

Feb. 19, 1969.

McCloskey, Wilson, Mosher & Martin, Palo Alto, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for defendants.

### MEMORANDUM AND ORDER

OLIVER J. CARTER, District Judge.

Plaintiff, an historian who is now a research associate at Stanford University's Hoover Institution on War, Revolution and Peace, brings this action pursuant to Section 3 of the Administrative Procedure Act, 5 U.S.C. § 552, to enjoin the Secretary of the Army from withholding a file described as "Forcible Repatriation of Displaced Soviet Citizens—Operation Keelhaul." The file was generated by the Allied Force Headquarters of World War II and has been classified Top Secret since 1948. The classification was made pursuant to the provisions of Executive Order 10501, 3 C.F.R. 484 (Supp.1968).

Subsection (a) of Section 3 of the Administrative Procedure Act provides in part:

"[E]ach agency, on request for identifiable records * * * shall make the records promptly available to any person. On complaint, the district court of the United States * * * has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld * * *. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action * * *."

Subsection (b) of Section 3 provides:

"This section does not apply to matters that are—

"(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy; * * *."

The defendants have moved to dismiss the action for lack of jurisdiction of the subject matter, or, in the alternative, for summary judgment. Plaintiff contends that the Top Secret classification on the file he seeks, is unwarranted and that this Court has the power to hold a trial de novo on the merits of this classification. He contends that such power is based on Section 3 of the Administrative Procedure Act. The Court is of the opinion that Congress did not intend to subject such classifications to judicial scrutiny to that extent.

Before discussing the purpose and effect of Section 3 of the Act, the Court directs its attention to the affidavit of Congressman John E. Moss, which plaintiff filed in support of his contentions. The affidavit has been introduced to give aid to the Court in interpreting the provisions of Section 3 of the Act. Congressman Moss' affidavit states:

"[S]pecifically, it was my intent as the principal co-author of the legislation to grant to the appropriate District Court the broadest latitude to review all agency acts in this regard, including the correctness of a designation by an agency bringing documents within an exemption found in Section '(e)' of the Act; and that the powers granted to the Court and the burdens placed upon the Government in Section '(c)' were meant to include rather than exclude the exemption."

 Statements made by legislators in debate can be a part of the legislative history which guides courts in statutory construction. See Bindczyck v. Finucane, 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100 (1951). On the other hand, statements made by a legislator after enactment of a statute and not a part of the records of the legislative body are entitled to little or no weight at all. National School of Aeronautics,

Inc. v. United States, 142 F.Supp. 933, 135 Ct.Cl. 343 (1956). See also, United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Such statements are not offered by way of committee report and are not offered for response by other members of the law-making body. The intent which is helpful in interpreting a statute, is the intent of the legislature and not of one of its members. For purposes of statutory construction, a legislative body can only speak through a statute, with the words that are used in light of the circumstances surrounding its enactment. For this reason, the Court has not considered the affidavit prepared and submitted by the Honorable John E. Moss solely for purposes of this lawsuit after the legislation in question was enacted.

Prior to amendment of Section 3 of the Act in 1966, this Section was described by Senator Long as:

"* * * full of loopholes which allow agencies to deny legitimate information to the public. Enumerable times it appears that information is withheld only to cover embarrassing mistakes or irregularities * * *." Senate Rep.No. 813, 89th Cong. 1st Sess., 111 Cong.Rec. 26821 (1965).

Senator Long went on to say in support of the amendment:

"It is the purpose of the present bill * * * to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language and to provide a court procedure by which citizens and the press may obtain information wrongfully withheld * * *." Id. at 26821

 This purpose of full disclosure was accomplished by giving the United States District Courts jurisdiction to determine de novo whether information was being properly withheld with the burden of the withholding agency to sustain its action. 5 U.S.C. § 552(a) (3). This jurisdiction does not apply to infor-

mation that falls within the exemptions set forth in subsection (b) of Section 3. To hold that the agencies have the burden of proving their action proper even in areas covered by the exemptions, would render the exemption provision meaningless. If a determination de novo is made by this Court on whether the Top Secret classification by the Department of Army is proper, with the burden on the Secretary to sustain its action, the Court would be giving identical treatment to information withheld by an agency whether it fell within the exemption or not. Apparently, Congress did not intend such a result.

It may be argued that the exemptions enumerated in Section 3 are set forth merely to designate the various grounds on which information may be withheld and that the burden is on the agency to show that the information properly falls within the exception, with the district court having jurisdiction to make the determination de novo. That this position is unwarranted is shown by the clear expression of Congress in Subsection (b) of Section 3, "This section *does not apply* to matters that are [listed below]." It is further shown by the statements of Congressman Gallagher on the floor of the House:

> "There has been some speculation that in strengthening the right of access to Government information, the bill, as drafted, may inadvertently permit the disclosure of certain types of information now kept secret by Executive order in the interest of national security.

> "Such speculation is without foundation. The committee, throughout its extensive hearings on the legislation and in its subsequent report, has made it crystal clear that the bill in no way affects categories of information which the President—as stated in the committee report—has determined must be classified to protect the national defense or to advance foreign policy. These areas of information most generally are' classified under

Executive Order No. 10501." 112 Cong.Rec. 13659 (June 20, 1966).

■■ On the other hand, it is equally without merit to say that Congress intended absolutely no effect by the Act on information that falls within the areas covered by the exemptions. The district courts at least have jurisdiction to determine whether the exemption applies in a given situation. In furtherance of this jurisdiction, it is reasonable to say that Congress intended the courts to determine whether classifications within the first exemption is clearly arbitrary and unsupportable. Otherwise, the agencies could easily frustrate the purpose of full disclosure intended by Congress merely by labeling the information to fall within the exemption.

In determining when information need not be disclosed if *classified* "top secret in the interest of national defense or foreign policy," guidance is set forth in the Act itself. Section 3 provides that the section does not apply to matters that are "*specifically required* by Executive order to be kept secret in the interest of the national defense or foreign policy." The Secretary of the Army has asserted the privilege of nondisclosure pursuant to Executive Order No. 10501 which reads in part:

> "Except as may be expressly provided by statute, the use of the classification Top Secret shall be authorized, by appropriate authority, only for defense information or material which requires the highest degree of protection. The Top Secret Classification shall be applied only to that information or material the defense aspect of which is paramount, and the unauthorized disclosure of which could result in exceptionally grave damage to the Nation such as leading to a definite break in diplomatic relations affecting the defense of the United States or its allies, a war, or the compromise of military or defense plans, or intelligence operations, or scientific or technological developments vital to the national defense." Exec. Order 10501, § 1(a).

Section 2 of the Executive Order further provides:

"In the [Department of the Army] the authority for original classification of information or material under this order may be exercised by the head of the department, agency, or governmental unit concerned or by such responsible officers or employees as he, or his representative, may designate for that purpose."

By this Executive Order, the President has delegated authority to the Department of Army to classify matters Top Secret. The exercise of this authority is, as it must be, discretionary in nature. Judgment in this area is best rendered by those best equipped with the necessary facilities to do so. The function of this Court is similar to that described in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), by Mr. Chief Justice Vinson:

"The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. * * * Regardless of how it is articulated, some like formula of compromise must be applied here. Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers. Yet we will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case. It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." Id. at pp. 8–10, 73 S.Ct. at p. 532.

The *Reynolds* case was decided before the amendment to Section 3 of the Administrative Procedure Act was adopted and dealt with information being sought by discovery procedures. There is no reason for denying application of the principles announced in *Reynolds* to this case. Professor Davis seems to accept this viewpoint in his discussion of the first exemption in Section 3 of the Act:

"The Department of Justice as recently as 1965 took an official position that in witholding information 'the Executive is accountable only to the electorate. Under the separation of powers concept, Congress cannot transfer responsibility for Executive records to the courts.' That position seems to me extreme, just as is the opposite position that the courts may take the whole power away from the executive would be extreme; the long-term constitutional solution is likely to follow the middle position of the *Reynolds* case that the executive determines the scope of the privilege, subject to a judicial check whenever a court has jurisdiction." Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 764–765 (1967).

■ It is the opinion of this Court that Congress has granted it jurisdiction to determine whether the first exemption of Section 3 applies in this case. Plaintiff admits that the information he seeks has been *classified* Top Secret by the Department of the Army. The question remaining is whether or not this information is "required by Executive order to be kept secret in the interest of the national defense or foreign policy." In answering this question, the Court is limited to determining whether the Secretary of the Army has acted capriciously in exercising the authority granted to him by Executive Order 10501.

■ Although the information before the Court is not extensive, it is sufficient for rendering a decision on the issue of summary judgment. The ultimate facts are practically uncontested. The affidavit produced by Major Gener-

al K. Wickham states that the documents in question are photographic reproductions made from microfilm copies of records generated by the Allied Force Headquarters which directed the allied military operations in the Mediterranean Theater of Operations. It further states that by direction of the Combined Chiefs of Staff, the original records were released to the United States Government. Top secret classification "was required because the files contained many individual top secret documents of combined or British origin." Plaintiff, in his brief, states that the file is believed to contain information dealing with about 900,000 anti-Communist Russians who were forcibly repatriated from Germany to the Soviet Union at the end of the Second World War, and were either executed or died in slave camps after their repatriation.

The general subject matter of the file in question is described in the preamble to House Resolution 24, 86th Congress 1st Sess. (1959). Plaintiff has appended to his brief a daily copy of the Congressional Record which describes Congressman Bosch's presentation of the remarks prepared by plaintiff in support of H.R. 24. In these remarks, the plaintiff himself had quoted and used the preamble to H.R. 24 which reads:

"Whereas this forced repatriation of prisoners of war and civilians cannot be justified by the agreement on prisoners of war, made public by the Department of State on March 8, 1946; and

"Whereas the forced repatriation of prisoners of war who had enlisted in the enemy's army was in contradiction to the opinion of the Judge Advocate General of the Army, as expressed during the last 40 years; and

"Whereas the forced repatriation of millions of anti-Communist prisoners of war and civilians represent an indelible blot on the American tradition of ready asylum for political exiles; and

"Whereas the forced repatriation and annihilation of millions of anti-Communist prisoners of war and civilians of Russian, Ukrainian, Polish, Hungarian, Baltic, and other origin is still poisoning our spiritual relations with the vigorously anti-Communist peoples behind the Iron Curtain, and is therefore impeding our foreign policy * * *." 105 Cong.Rec. A3226 (1959).

The Court concludes that the information above speaks for itself and thus finds that the circumstances are appropriate for the classification made by the Department of the Army in the interest of "the national defense or foreign policy."

Accordingly, the motion to dismiss the complaint is denied, and the motion for summary judgment is granted in favor of the defendants.