Argued and submitted July 16, 2002, affirmed January 29, 2003

## SALEM-KEIZER ASSOCIATION OF CLASSIFIED EMPLOYEES,
### *Respondent,*

*v.*

## SALEM-KEIZER SCHOOL DISTRICT 24J,
### *Petitioner,*

*and*

## EMPLOYMENT RELATIONS BOARD,
### *Respondent.*

### UP-83-99; A115616

61 P3d 970

Nancy J. Hungerford argued the cause for petitioner. With her on the brief was Brian Hungerford.

Monica A. Smith argued the cause for respondent Salem-Keizer Association of Classified Employees. With her on the brief was Smith, Gamson, Diamond & Olney.

Richard Wasserman, Assistant Attorney General, waived appearance for respondent Employment Relations Board.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Salem-Keizer School District 24J (the district) seeks review of a final order of the Employment Relations Board (ERB) concluding that the district committed an unfair labor practice when it refused to implement an arbitration award that required the district to reinstate an employee (grievant) after she had been terminated for having been arrested for shoplifting from a local department store. The district contends that the award violates public policy and is therefore unenforceable under ORS 243.706(1). We review for errors of law, ORS 183.482(8)(a), and affirm.

The relevant facts are not in dispute. Grievant was an elementary school instructional assistant. She worked with special education students with severe behavioral problems in an "emotional growth" program. For approximately six years, grievant received favorable annual evaluations and was not disciplined by the district.

In 1998, grievant was arrested for shoplifting approximately $300 in merchandise from a local department store. Grievant admitted the theft but the district attorney chose not to prosecute her. When the district learned of grievant's arrest, it decided to fire her. It sent her a termination letter explaining that she was no longer an effective role model and that it could not rely on her good judgment at all times.

Grievant's bargaining unit, the Salem-Keizer Association of Classified Employees (the association), filed a grievance disputing the termination. The matter eventually proceeded to arbitration. The arbitrator ordered grievant's reinstatement. While acknowledging grievant's "serious personal misconduct," the arbitrator concluded that the district lacked just cause to do more than suspend her for one week without pay.

The district refused to reinstate grievant on the ground that she had committed second-degree theft and that, under ORS 243.706(1), it did not have to comply with the arbitration award because her conduct violated public policy. In response, the association filed an unfair labor practice

complaint with ERB, claiming that the district's refusal to comply with the arbitration award amounted to an unfair labor practice in violation of ORS 243.672(1)(g).

At the hearing, the district proffered the testimony of numerous witnesses. Among the witnesses was former Senator Neil Bryant, whom the district asked to testify about his understanding as to the intended meaning of ORS 243.706(1). The association objected, arguing that any testimony by Bryant would be unnecessary and inadmissible. The hearing officer agreed and excluded the testimony.

The district also called several witnesses to testify about the nature of grievant's conduct and the consequences of permitting grievant to return to work. The association objected to the testimony of those witnesses as well, but the hearing officer permitted them to testify.

Dr. Olin Bolstad testified about the probable impact on students if grievant were reinstated. He testified that those children would have difficulty dealing with the fact that someone who had been delivering moral and character education to them had engaged in the exact type of behavior that they had been instructed to avoid. He opined that her reinstatement would likely have a negative impact on the children because, in essence, it excused that type of criminal behavior.

Sergeant Steven Bellshaw of the Salem Police Department testified about the seriousness of grievant's criminal conduct. He testified that shoplifting is a major problem in Salem, and throughout the United States, and that retailers must increase their prices to account for the millions of dollars they lose each year to shoplifting. Bellshaw also testified that shoplifting is especially prevalent among children and that most young shoplifters who are caught consider it "not that big a deal."

Finally, district school board member Craig Smith testified about the expectations that the district had for its employees. He stated that, not only did the district expect its employees to model appropriate behavior, but that the parents of the students expected it as well.

In a recommended ruling, the hearing officer reversed his ruling as to the admissibility of the testimony concerning the nature of grievant's conduct and the impact of her reinstatement. The hearing officer then concluded that the award of reinstatement did not violate public policy and that, as a result, the district was required to implement it.

ERB agreed with the hearing officer that neither Senator Bryant's testimony nor the testimony of the witnesses as to the nature of grievant's conduct and the consequences of her reinstatement was admissible. It also agreed with the hearing officer that the arbitrator's award did not violate public policy and that the district had engaged in an unfair labor practice in refusing to implement the award. ERB explained that, under ORS 243.706(1), the proper inquiry "is whether the award of reinstatement violates public policy, not whether the Grievant's misconduct does." It then explained why the reinstatement of grievant did not violate public policy:

> "Oregon law prohibits school districts from employing individuals that are convicted of certain crimes specifically listed in the law—Theft II is not on that list. *See* ORS 326.603(3)(a) and ORS 342.143(3)(a)(A). This omission is significant. Had the legislature intended that school districts be prohibited from employing an individual convicted of Theft II, it would have included that crime on the extensive list of crimes specified in the relevant statute. It did not do so.

> "Furthermore, the Grievant was not convicted of Theft II—she was not prosecuted."

On review, the district contends that ERB erred in two respects. First, it assigns error to ERB's determination that the district committed an unfair labor practice by refusing to implement the arbitration award. The district contends that the award, which compels it to reinstate the grievant, violates public policy and is therefore unenforceable under ORS 243.706(1). According to the district, ERB erred in focusing on the question whether the arbitrator's award— that is, whether the remedy of reinstatement of grievant— violates public policy expressed in statutes or judicial decisions. The district argues that the proper focus is not nearly

so narrow and that ERB should have considered whether the arbitrator's award has the effect of "excus[ing] conduct that society has deemed to be unacceptable," as expressed not only in statutes or judicial decisions but also in other sources of public policy. Second, the district assigns error to ERB's evidentiary rulings excluding the testimony regarding the legislative history of ORS 243.706(1) and regarding the nature of grievant's conduct and the consequences of reinstating her.

█ We begin with whether ERB erred in concluding that the district committed an unfair labor practice in refusing to implement the arbitrator's award. ORS 243.706(1) provides, in part:

> "As a condition of enforceability, any arbitration award that orders the reinstatement of a public employee or otherwise relieves the public employee of responsibility for misconduct shall comply with public policy requirements as clearly defined in statutes or judicial decisions including but not limited to policies respecting sexual harassment or sexual misconduct, unjustified and egregious use of physical or deadly force and serious criminal misconduct, related to work."

As we have previously explained, "the unambiguous terms of the statute dictate that the public policy analysis be directed at the arbitration award itself, not the conduct for which discipline was imposed." *Washington Cty. Police Assn. v. Washington Cty.*, 181 Or App 448, 452, 45 P3d 515, *rev allowed*, 334 Or 491 (2002); *see also Deschutes Cty. Sheriff's Assn. v. Deschutes Cty.*, 169 Or App 445, 453, 9 P3d 742 (2000), *rev den*, 332 Or 137 (2001) ("[I]t is the *award* that must comply with public policy." (Emphasis in original.)). Whether the employee's conduct that prompted the discipline violates public policy is not dispositive. *Washington Cty. Police Assn.*, 181 Or App at 452-53. Thus, the issue in this case is whether the reinstatement of an instructional assistant who has admitted to, but who has not been convicted of, the crime of second-degree theft, ORS 164.045, violates public policy.

The public policy exception applies only to those policies that are "clearly defined in statutes or judicial decisions." ORS 243.706(1). Put another way, the award must

order something that either the legislature or the courts have determined to be contrary to public policy. The wording of the statute simply does not accommodate the district's contention that other sources of public policy are relevant. *Washington Cty. Police Assn.*, 181 Or App at 453 ("Under Oregon law, the relevant policies are only those clearly defined in statutes or judicial decisions.").

■■ With those principles in mind, we turn to whether there are any public policies that would prevent grievant's reinstatement. The district begins by arguing that the "fact that an act is declared illegal by statute is evidence of the fact that the public has determined certain conduct to be unacceptable." But, as we have noted, whether the underlying conduct violates public policy is not the relevant inquiry. The district similarly points to various administrative rules concerning the moral character of teachers and educational assistants. *E.g.*, OAR 581-037-0006 (providing that educational assistants must have "standards of moral character as required of teachers"); OAR 584-020-0040(5) (teacher's off-work conduct that bears "a demonstrable relationship to the educator's ability to fulfill professional responsibilities" may constitute "gross unfitness," evidence of which may include engaging in criminal conduct). Even assuming that those rules apply to grievant, however, the fact remains that they are not "clearly defined in statutes or judicial decisions," as required under ORS 243.706(1) to be relevant to the inquiry. The district also argues that its own board of directors had adopted a policy that provides that "[c]onviction of a felony or other crime involving moral turpitude" is grounds for termination. But, once again, the board's policy is not a source of public policy that is cognizable under ORS 243.706(1). Moreover, even if it were, grievant was not convicted of any felony or other crime involving moral turpitude; grievant was not even charged.

■ The only relevant source of public policy is the one that ERB noted, namely, ORS 326.603(3)(a). That statute provides that, if the Superintendent of Public Instruction informs a school district that a specified district employee—including an instructional assistant—"has been convicted of a crime listed in ORS 342.143 or has made a false statement

as to the conviction of a crime," the district is not to employ or contract with the individual.

The statute thus enumerates two conditions that are relevant to this case. First, it applies only when the specified employee has been "convicted." Second, it applies only when the conviction is for "a crime listed in ORS 342.143."

■ In this case, as we have noted, grievant was not even charged with, let alone "convicted" of, second-degree theft. Moreover, the list of offenses in ORS 342.143—46 in all— does not include second-degree theft. Thus, even if grievant had been convicted of second-degree theft, the legislature has determined that conviction of that particular crime does not necessarily preclude employment as an educator. We therefore conclude that ERB did not err in determining that enforcing the arbitrator's award in this case would not violate any public policy clearly expressed in statutes or judicial decisions. ORS 243.706(1).

■ We turn to the district's contention that ERB erred in excluding the testimony of various witnesses. We begin with the testimony of Senator Bryant. The district argues that his testimony is vital to determining the intended meaning of ORS 243.706(1), particularly with respect to the issue whether the public policies that may preclude enforcement of an arbitrator's award must be expressed solely in statutes or judicial decisions.

■ The rule in this state is that "[s]ubsequent statements by legislators are not probative of the intent of statutes already in effect." *United Telephone Employees PAC v. Secretary of State*, 138 Or App 135, 139, 906 P2d 306 (1995). It is a rule that appears to have been adopted by nearly every other court that has addressed the issue. *See, e.g., Bread Political Action Committee v. FEC*, 455 US 577, 582 n 3, 102 S Ct 1235, 71 L Ed 2d 432 (1982) (post-enactment affidavit of legislator is entitled to no weight); *State Wholesale Grocers v. Great Atlantic & P. Tea Co.*, 154 F Supp 471, 484-85 (ND Ill 1957), *rev'd on other grounds*, 258 P2d 831 (7th Cir 1958) (post-enactment book authored by congressional sponsor is not competent evidence of legislative intent); *Picture Rocks Fire Dist. v. Pima County*, 152 Ariz 442, 444, 733 P2d 639,

641 (Ariz Ct App 1986) (upholding exclusion of post-enactment deposition of state senator on issue of intended meaning of disputed statute); *City of Spokane v. State*, 198 Wash 682, 685-87, 89 P2d 826, 828-29 (1939) (legislative intent cannot be demonstrated by post-enactment depositions and affidavits of legislators and government officers); *but see Stewart v. Bd. of Med. Quality Assur. Department*, 80 Cal App 3d 172, 183, 143 Cal Rptr 641, 647 (1978) ("Statements of individual legislators are not inadmissible; the issue is merely one of the weight which these may be accorded.").

■    Oregon courts have never explained the basis for the rule. It appears to be based on two considerations. First, post-enactment statements of legislators are not part of the record of the Legislative Assembly that are considered the contemporaneous "history" that is appropriate for courts to consult. *See, e.g., Epstein v. Resor*, 296 F Supp 214, 216 (ND Ca 1969), *aff'd*, 421 F2d 930 (9th Cir 1970) (post-enactment statements of legislators entitled to little or no weight because they are "not a part of the records of the legislative body"); *McGee v. Stone*, 522 A2d 211, 216 (RI 1987) ("Postenactment statements of legislators relating to legislative intent, however, are not part of the legislative history of the original enactment.").

Second, a post-enactment statement of an individual legislator represents the views—or, perhaps more accurately, the recollections—of a single participant in the legislative process. Even when the statements of individual legislators are offered during the enactment process, they are commonly viewed cautiously as evidence of the intentions of the entire assembly. *See, e.g., Davis v. O'Brien*, 320 Or 729, 745, 891 P2d 1307 (1995) ("isolated statements made in committee are not necessarily indicative of the intent of the entire legislature"). Courts are all the more loath to determine the intentions of the institution as a whole on the basis of isolated statements that are generated after enactment, without any evidence that the other members of the legislative body even were aware of them, much less that they agreed with them. *See, e.g., Regional Rail Reorganization Act Cases*, 419 US 102, 132, 95 S Ct 335, 42 L Ed 2d 320 (1974) (post-enactment statements of legislators "represent only the

personal views of these legislators, since the statements were [made] after the passage of the act" (internal quotation marks omitted)).

In this case, the proffered testimony of Senator Bryant clearly runs afoul of the rule precluding consideration of such post-enactment "history." We conclude that ERB did not err in refusing to admit it.

That leaves the testimony of the other witnesses as to the nature of grievant's offense and the consequences of reinstating her. The district offered that testimony in support of its contention that reinstating grievant would violate public policy. As we have noted, however, under ORS 243.706(1), an employer may decline to enforce an arbitrator's award only if doing so would contravene public policies "clearly defined in statutes or judicial decisions." The testimony of the witnesses as to the public policy implications of reinstating grievant is entirely irrelevant to that inquiry. We conclude that ERB did not err in excluding that testimony.

Affirmed.