92 P.3d 514

Deborah Jean "DJ" GILLIHAN, as the natural parent and guardian of Celia Gillihan, a minor, Plaintiff–Appellant,

v.

Heidi L. GUMP, individually; Solveig H. Lenhartzen, individually; and Does I–V, unknown parties, Defendants–Respondents.

No. 30164.

Supreme Court of Idaho, Boise, February 2004 Term.

May 18, 2004.

Rehearing Denied June 28, 2004.

Litster Law Offices, Boise, for appellant. Richard K. Dredge argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondents. Raymond D. Powers argued.

SCHROEDER, Justice.

This case arises from a personal injury action prosecuted by appellant Deborah Jean Gillihan ("Gillihan") as natural parent and guardian of Celia D. Gillihan, a minor ("Celia") (Gillihan and Celia together referred to as "Appellants"), against Heidi L. Gump and Solveig H. Lenhartzen (together referred to as "Respondents"). The case was tried before a jury which rendered a verdict in favor of the Respondents who request an award of costs and attorney fees which was granted by the district court. The Court of Appeals affirmed the district court's award of costs as a matter of right but reversed the award of attorney fees. The Respondents petitioned for review of the Court of Appeals' decision which was granted on the question of whether a defendant may recover attorney fees in personal injury actions under $25,000.

## I.

### FACTS AND PROCEDURAL HISTORY

Gillihan, as parent and guardian of Celia, brought this tort action, seeking damages of less than $25,000 for injuries that Celia received on the Respondents' property. The injury occurred when a wooden plank covering the Respondents' irrigation box broke when Celia stepped on it. A jury trial resulted in a verdict finding that both parties were negligent, assessing 90 percent of the negligence to Celia and 10 percent to the Respondents. The district court entered judgment in favor of the Respondents. Subsequently, the Respondents filed a motion requesting an award of attorney fees pursuant to I.C. § 12–120(1). Gillihan objected, arguing that I.C. § 12–120(1) is not applicable to personal injury actions and that under I.C. § 12–120(4), attorney fees may be recovered only by prevailing plaintiffs in such actions. The district court granted the Respondents' motion and awarded attorney fees in the amount of $26,135.50. The Court of Appeals reversed the award on the basis that I.C. § 12–120(4) is the exclusive authorization for recovery of

attorney fees in personal injury actions under $25,000.00.

## II.

### THE AWARD OF ATTORNEY FEES

#### A. Applicable Statute

The resolution of this case depends upon the interpretation of Sections (1) and (4) of I.C. § 12–120 which provide the following:

"(1) Except as provided in subsections (3) and (4) of this section, in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees. For the plaintiff to be awarded attorney fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action; provided, that no attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action, an amount at least equal to ninety-five percent (95%) of the amount awarded to the plaintiff.

. . .

(4) In actions for personal injury, where the amount of plaintiff's claim for damages does not exceed twenty-five thousand dollars ($25,000), there shall be taxed and allowed to the claimant, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees. For the plaintiff to be awarded attorney fees for the prosecution of the action, written demand for payment of the claim and a statement of claim must have been served on the defendant's insurer, if known, or if there is no known insurer, then on the defendant, not less than sixty (60) days before the commencement of the action; provided that no attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action, an amount at least equal to ninety percent (90%) of the amount awarded to the plaintiff."

#### B. Standard of Review

The interpretation of a statute is an issue of law over which the Court exercises free review. *Idaho Fair Share v. Idaho Public Utilities Comm'n*, 113 Idaho 959, 961–62, 751 P.2d 107, 109–10 (1988), overruled on other grounds by *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho 849, 820 P.2d 1206 (1991). The primary function of the Court is to determine and give effect to the legislative intent. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990). Such intent should be derived from a reading of the whole act at issue. *Id.* at 539, 797 P.2d at 1387–88. If the statutory language is unambiguous, "the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *George W. Watkins Family*, 118 Idaho at 540, 797 P.2d at 1388.

When a statute is ambiguous, the determination of the meaning of the statute and its application is also a matter of law over which this Court exercises free review. *Kelso & Irwin, P.A. v. State Insur. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000); *J.R. Simplot Co. v. Western Heritage Ins. Co.*, 132 Idaho 582, 584, 977 P.2d 196, 198 (1999). If it is necessary for this Court to interpret a statute, the Court will attempt to ascertain legislative intent, and in construing a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A.* at 134, 997 P.2d at 595.

Relevant rules of statutory construction indicate the Court must examine the Act in its entirety, making certain to read the provision in context and applying any statutory definitions provided. *See* I.C. § 72–102 ("Words and terms used in the worker's com-

pensation law, unless the context otherwise requires, are defined in the subsections which follow.") Some terms and phrases have developed a specific meaning or subtext resulting from years of consistent judicial interpretation and "[t]his Court assumes the Legislature has full knowledge of this existing judicial interpretation, when it amends a statute." *State v. Martinez,* 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct.App.1995). The Court has held that "[t]he legislature is presumed not to intend to overturn long established principles of law unless an intention to do so plainly appears by express declaration or the language employed admits no other construction." *George W. Watkins Family v. Messenger,* 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990).

**C. Idaho Code § 12–120 creates a unique protocol for the plaintiff to obtain attorney fees in personal injury actions under $25,000.**

█ The Appellants argue that it is clear from the language of the statute that subsection (1) does not apply to personal injury actions, and second, that subsection (4) only allows for attorney fees to be awarded to a plaintiff.

Subsection (1) contains the following language, "Except as provided in subsections (3) and (4) of this section ..." The Appellants maintain these words mean that in a small personal injury action only subsection (4) applies, and as such, none of the language of subsection (1) regarding fees to the "prevailing party" applies to such personal injury actions. This interpretation is not supported by the plain meaning of the phrase "except as provided in." The plain meaning of I.C. § 12–120(1) indicates that it continues to apply to the extent it is not inconsistent with the specific provisions of subsection (4). Subsection (4) changes two parts of subsection (1) when the case is a personal injury action: first, it requires that the plaintiff must serve its statement of claim not less than sixty days to the defendant's insurer rather than the ten days as required under subsection (1); and second, it only requires that the defendant tender to the plaintiff, prior to the commencement of the action, an amount equal to 90% of the amount awarded to the plaintiff for attorney fees to be disallowed rather than the 95% requirement found in subsection (1). Subsection (4) modifies subsection (1) to the extent that the two provisions are inconsistent. This conclusion is supported by the fact that subsection (4) does not definitively prevent a defendant from recovering fees. The relevant language of the statute is as follows:

> In actions for personal injury, where the amount of **plaintiff's** claim for damages does not exceed twenty-five thousand dollars ($25,000), there shall be taxed and allowed to the **claimant,** as part of the costs of the action, a reasonable amount to be fixed by the court as attorneys fees. For the **plaintiff** to be awarded attorney fees for the prosecution of the action, written demand for payment must have been served ...

I.C. § 12–120(4) (emphasis added). The Appellants' argument that only plaintiffs can recover fees hinges on the interpretation of the term "claimant" to be synonymous with "plaintiff." A more logical reading of the statute is that "claimant" refers to a prevailing party (plaintiff or defendant) claiming attorney fees in an action meeting the other requirements of the statute. The legislature used the term "plaintiff" in subsection (4) when modifying subsection (1) but when it addressed the right to an award it used the term "claimant" which in context may be either a plaintiff or a defendant.

**D. Allowing only plaintiffs to be awarded attorney fees in small personal injury actions would provide a disincentive for plaintiffs to enter into a reasonable settlement.**

The interpretation of subsection (4) as a modifier of subsection (1) is supported by public policy. If the Respondents' position were accepted there would be no real incentive for an unreasonable plaintiff to accept a reasonable settlement offer, because there would be no risk that attorney fees would·be imposed. A plaintiff could demand $25,000 in settlement with no incentive to be more reasonable because the defendant could prevail and still not obtain a judgment for attorney fees. The case at bar is a good example.

The costs to the defendant of going to trial were significant even though the injuries were small. In an apparent effort to avoid this expense, the Respondents offered the Appellants a settlement offer of $5,350 which appears to be a generous amount for the relatively small injury incurred by Celia and the likelihood of a defense to the action. Under the statutory interpretation asserted by Appellants, going to trial carried with it no consequences to the Appellants other than potential non-recovery of damages. The risk to them of turning down the offer carried with it a maximum loss of $5,350. However, the potential cost to the Respondents was to either offer what they viewed as an unreasonably high amount or incur the cost of going to trial. Had Appellants known that the potential existed to be charged with the Respondents' costs of trying the case, the final settlement offer may have been viewed in a more favorable light.

### E. The legislative history does not indicate the legislature intended that only plaintiffs be allowed to be awarded attorney fees in small personal injury actions.

It is not clear from the legislative history of I.C. § 12–120 that the legislature intended to completely bar defendants from the potential for an attorney fee award in a personal injury action under $25,000. However, it is clearly stated that the legislature intended to provide additional time for defendants to evaluate a case. *See* Minutes, Senate Judiciary and Rules Committee, March 11, 1996. Furthermore, House Bill No. 708's title supports this proposition:

An Act Relating to Attorney Fees in Civil Actions; Amending Section 12–120, Idaho Code, *To Provide a Different Process for the Award of Attorney Fees in Actions for Personal Injury* and to Make a Technical Correction.

H.B. No. 708, 53rd Legislature, 2nd Regular Session—1996 (emphasis added). Nowhere in the recorded legislative history does it contain discussion of the policy considerations asserted by the Appellants, specifically, that the statute is intended to apply pressure only on defendants to consider settlement appeals. Except for an affidavit of a member of the House of Representatives, which will be discussed, the only stated purpose of subsection (4) was to remedy the difficulties faced by defendants in small personal injury actions to prepare a case in the ten day period given them in subsection (1). Rather than intending to create an attorney fees safe harbor to plaintiffs in small personal injury actions, the only stated legislative intent was to create the requirement that a plaintiff give defendants sixty days notice rather than merely ten as was required before the addition of subsection (4).

### F. The Representative's affidavit concerning legislative intent must be disregarded.

 The Appellants offered the affidavit of a member of the House of Representatives as support for their interpretation of the statute. However, the accepted rule in most jurisdictions is that the beliefs of one legislator do not establish that the legislature intended something other than its express declaration. The policy behind this rule is well stated in the Oregon case, *Salem Keizer Ass'n of Classified Employees v. Salem Keizer School Dist. 24J*, 186 Or.App. 19, 61 P.3d 970 (203):

First, post-enactment statements of legislators are not part of the record of the Legislative Assembly that are considered the contemporaneous "history" that is appropriate for courts to consult. *See, e.g., Epstein v. Resor*, 296 F.Supp. 214, 216 (N.D.Ca.1969), *aff'd*, 421 F.2d 930 (9th Cir. 1970) (post-enactment statements of legislators entitled to little or no weight because they are "not a part of the records of the legislative body"); *McGee v. Stone*, 522 A.2d 211, 216 (R.I.1987) ("Postenactment statements of legislators relating to legislative intent, however, are not part of the legislative history of the original enactment.").

Second, a post-enactment statement of an individual legislator represents the views—or, perhaps more accurately, the recollections—of a single participant in the legislative process. Even when the statements of individual legislators are offered during the enactment process, they are commonly

viewed cautiously as evidence of the intentions of the entire assembly. *See, e.g., Davis v. O'Brien,* 320 Or. 729, 745, 891 P.2d 1307 (1995) ("isolated statements made in committee are not necessarily indicative of the intent of the entire legislature"). Courts are all the more loath to determine the intentions of the institution as a whole on the basis of isolated statements that are generated after enactment, without any evidence that the other members of the legislative body even were aware of them, much less that they agreed with them. *See, e.g., Regional Rail Reorganization Act Cases,* 419 U.S. 102, 132, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (post-enactment statements of legislators "represent only the personal views of these legislators, since the statements were [made] after the passage of the act.") *Id.* at 975. The Court will not consider the affidavit presented by the Appellants.

## III.

### CONCLUSION

The decision of the district court awarding attorney fees is affirmed. The Respondents are awarded costs.

Chief Justice TROUT, concurs in the result.

Justice KIDWELL, concurs.

Justice BURDICK, Dissenting.

I respectfully dissent from the majority opinion based upon a plain reading of the statutory language as well as the legislative history of I.C. § 12–120. In interpreting a statute, this Court looks first to the plain meaning of the language to see if there is an ambiguity. *Jen–Rath Co. Inc. v. Kit Mfg. Co.,* 137 Idaho 330, 48 P.3d 659 (2002). If there is no ambiguity, the Court analyzes the plain meaning of the words to ascertain the intent of the legislature. *Id.* Additionally, if the statute can be interpreted in two reasonable fashions, then the statute is ambiguous, *id.,* and further information can be used to glean the legislative intent. *See Kootenai Elec. Coop., Inc. v. Washington Water Power*

Co., 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995) (examining factors such as the statute's language, the reasonableness of a proposed interpretation, and the policy underlying the statute).

The language in I.C. § 12–120(4) specifically states "an action for personal injury, where the amount of plaintiff's claim for damages does not exceed twenty-five thousand ($25,000), there shall be taxed and allowed to the *claimant* ... attorneys fees." (Emphasis added.) Subsection 4 of Idaho Code 12–120 further states that a plaintiff in order to be awarded attorney fees, must make written demand for payment of the underlying *claim* and must furnish a statement of the underlying *claim* sixty days prior to filing to the defendant's insurer or the defendant if the insurer is not known. The only mention of claim in I.C. § 12–120(4) is as to the plaintiff's prerequisite action to allowing an attorney fee award. How can "claimant" be interpreted to be anything other than plaintiff?

Significantly, the last paragraph of subsection 4 provides that a claimant who wishes to ask for attorney fees under this code section must give up valuable rights under Idaho Rule of Civil Procedure 15(a) concerning the amendment of his cause of action. The statute states specifically, "If the plaintiff includes in the complaint filed to commence the action, or in evidence offered at trial, a different alleged injury or a significant new item of damage not set forth in the statement of claim, the plaintiff shall be deemed to have waived any entitlement to attorney fees under this section." This was new language adopted when the new subsection (4) was enacted in 1996.[1] It is plain to see from the 1996 addition to I.C. § 12–120 that the plaintiffs gave up significant rights in order to allow them to recover attorney fees in this subsection. The time period for the defendants to respond to a demand was extended from ten to sixty days. The defendants were given the additional safeguard that a claimant could not change his alleged injury or any significant new item of damage once demand had been made. This shows a spe-

---

1. 1996 Idaho Session Laws, ch. 383, § 1, p. 1305.

cific intent by the 1996 legislature in the enactment of subsection (4) to allow a cause of action to be framed very quickly by the plaintiff and to give a reasonable period of time of sixty days for insurance companies (who are specifically mentioned in the subsection) the claimants, and their attorneys to then settle these matters on an expedited basis.

I believe it very important also to note the title of the bill enacted in 1996. The title of that bill is as follows:

AN ACT RELATING TO ATTORNEY FEES IN CIVIL ACTIONS: AMENDING SECTION 12–120, IDAHO CODE, TO PROVIDE A DIFFERENT PROCESS FOR THE AWARD OF ATTORNEY FEES IN ACTIONS FOR PERSONAL INJURY AND TO MAKE A TECHNICAL CORRECTION.

1996 IDAHO SESSION LAWS, ch. 383, § 1, p. 1305. It is plain that the technical correction was the changing in I.C. § 12–120(1) from "per cent" to "percent." The title meant there was a wholly "different process for award of attorney fees in actions for personal injury" not a "different process for award of attorney fees to *plaintiffs* in actions for personal injuries."

It is important to note the original I.C. § 12–120 was passed in 1970[2] and initially, that code section applied to "... any action for damages for an injury or wrong to the person or property, or both, of another ..." Although the statute was amended four times prior to the 1996 amendment, the legislature had never divided the personal property actions from the personal injury actions, until 1996. Again this shows the legislative intent that subsection (4) should stand alone. I would point to the language in I.C. § 12–120(1) which says, "[e]xcept as provided in subsections (3) and (4) of this section ..." for the proposition that I.C. § 12–120(4) must stand alone and independent of I.C. § 12–120(1).

Throughout the history of I.C. § 12–120, there has always been a delineation between which actions a plaintiff must take and which actions a defendant who pleads a counter-claim in that regard must take in order to be allowed attorney fees. It is significant that in the 1996 amendment which took personal injury cases out of subsection (1), there is absolutely no comment concerning a defendant's counterclaim or what a defendant should do to be awarded attorney fees under subsection (4). It is obvious from this exclusion of the defendants, that the legislature knew that it was excluding the defendants from the operation of subsection (4). Certainly, with twenty-plus years of delineating in subsections (1) and (2) what the plaintiffs and what the defendants were required to do to prevail under this code section, the lack of any mention of "the defendant" in subsection (4) is no mistake.

I would also point to Idaho Rule of Civil Procedure 3(a), which states a civil action is commenced by the filing of a complaint and the party filing the same shall be designated as the plaintiff. This section goes on to indicate "no *claim*, controversy or dispute may be submitted to any court in the state for determination or judgment without filing a complaint ..." It is very plain that only the plaintiff pursuant to I.R.C.P. 3(a) may bring a *claim* against a defendant in a complaint.

Therefore, the plain language of I.C. § 12–120 necessitates a finding that the district court could only apply I.C. § 12–120(4) to a personal injury action for under $25,000; and by the clear legislative intent, only the plaintiff may recover attorney fees if he is awarded a recovery. This Court should reverse the district court and remand with an order to enter an attorney fee award in favor of the plaintiff, pursuant to I.R.C.P. 54(e).

Justice EISMANN, Concurring in Dissent.

I concur in Justice Burdick's dissent, and write only to add additional information regarding the legislative intent. Subsection (4) of the statute currently states that "there shall be taxed and allowed to the claimant ... a reasonable amount to be fixed by the court as attorney fees." The issue is what the legislature intended by the word "claimant." The word could refer either to the person who had a claim to recover damages

---

2. 1970 IDAHO SESSION LAWS, ch. 44, § 1, p. 91.

or the person who has a claim to recover attorney fees. If it means the latter, then it would be the same as the prevailing party. I know of no statute in Idaho that provides for an award of attorney fees to the losing party in litigation. When this statute was initially introduced in the house, it provided that "there shall be taxed and allowed to the prevailing party ... a reasonable amount to be fixed by the court as attorney fees." It was amended in the house to change "prevailing party" to "claimant." I assume that the change in wording was intended to cause a change in meaning. Therefore, it seems most probable to me that claimant means the person who has a cause of action for damages rather than the person who has a claim for attorney fees as the prevailing party in the litigation.