IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 50756

| | | |
|---|---|---|
| LAURIE BARTON | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Moscow, April 2024 Term |
| v. | ) | |
| | ) | Opinion Filed: June 7, 2024 |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF IDAHO; A | ) | Melanie Gagnepain, Clerk |
| CORPORATION; IDAHO STATE | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. John C. Judge, District Judge.

The district court judgment is <u>affirmed</u>.

Laurie Barton, *pro se* for Appellant. Laurie Barton argued.

Clements, Brown, McNichols, P.A., attorneys for Respondents. Bentley Stromberg argued.

———————————————

BEVAN, Chief Justice.

This appeal concerns a lawsuit arising from Appellant Laurie Barton's violations of the University of Idaho, College of Law's honor code. During her third year, Barton was charged with violating the honor code after committing academic misconduct during a final examination. Barton denied the allegations during subsequent Honor Court proceedings, but she was ultimately sanctioned with degree denial. After Barton exhausted her administrative review options, including an appeal to the Idaho State Board of Education, she petitioned for judicial review. The district court denied her petition after a hearing. Barton later stipulated to dismiss an appeal of the petition's denial. Instead, Barton sued the Board of Regents of the University of Idaho and Idaho State Board of Education, alleging nine causes of action, all of which the district court dismissed at summary judgment. The district court also denied Barton's subsequent motion for reconsideration. For the reasons below, we affirm the district court's decision.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

During her third year (spring 2017) at the University of Idaho, College of Law, Barton committed academic misconduct while taking a final examination.[1] Shortly after the misconduct was discovered, and just before summer break, the College of Law's Honor Court served Barton with a notice of complaint. Before any Honor Court proceedings occurred to adjudicate the violation, Barton sought and received a retroactive medical withdrawal from the College of Law for the spring semester.

With approval from the College of Law, Barton returned to school for the fall 2017 semester to retake the credits from the spring 2017 semester. On October 18, 2017, Barton received a formal charge alleging misconduct from spring 2017. Following the earlier notice, Barton was served with a complaint,[2] which alleged:

> Count 1: In violation of Article III(C)(1) of the College of Law Honor Code, Laurie Barton received aid on the final examination from a source not expressly authorized by the instructor.

> Count 2: In violation of Article III(C)(5) of the[ ] College of Law Honor Code, Laurie Barton violated, announced, or published examination policies, procedures, rules, or instructions, which gave her an advantage on her Remedies exam.

The complaint alleged that, during the Remedies final exam, Barton had documents open on her computer that were related to that class and that she conducted internet searches for specific topics on her exam. A merits hearing was set for December 1, 2017, along with a sanctions hearing, if needed, to occur later that day.

On November 22, 2017, Barton retained counsel, who moved to continue the merits hearing and reset the disclosure deadlines previously set. The motion was granted, and the merits hearing was moved to January 26, 2018, with the sanctions hearing tentatively scheduled for February 2, 2018.

---

[1] Barton does not to dispute that she violated the honor code during her Remedies exam. Findings from the Honor Court explain that "Barton accessed a Remedies outline after receiving a hard copy of her final exam. She did not log into Examsoft as required, which would have blocked access to any other programs on her computer. She then downloaded a Remedies outline, and used her internet browser to obtain Remedies flowcharts." Despite initially challenging these findings through an appeal of the Honor Court's decision, Barton stipulated to dismiss the appeal, and instead, filed the complaint from which this appeal stems.

[2] The formal charge of the violation is called a "complaint." The University's Honor Code refers to a "complaint" as a "written charge of violation." Thus, throughout the proceedings below, the district court refers to the formal charge against Barton as a "complaint." We do likewise.

The merits hearing was held on January 26 and February 2, 2018. On March 7, 2018, the Honor Court issued its findings of fact and opinion, finding that Barton violated sections III(C)(1) and (5) of the honor code. Concerning section III(C)(1), the Honor Court found by clear and convincing evidence that Barton "acted with gross negligence by not logging into Examsoft after she received her password, by using her laptop computer to access a Remedies outline at 9:22 a.m., and then by performing internet searches at 10:33 am. and 11:44 a.m., all the while the hard copy of the exam was in front of her." The final exam was a closed book examination. Barton testified, among other things, that: (1) "the browsers opened when [Barton] opened her computer"; (2) "[Barton] did not recognize the Remedies outline and did not use it"; and (3) "the browser re-opened with [Barton's] searches from the night before." The Honor Court did not find this testimony credible.

As for section III(C)(5), the Honor Court found by clear and convincing evidence that Barton "acted with gross negligence by violating examination policies, procedures, rules, or instructions by using material that would tend to give her an advantage, and which would put other students at a disadvantage." The Honor Court specified that Barton's "access to a Remedies outline" and her "internet searches of Remedies flowcharts" supported its findings. Barton also "failed to follow exam procedures that require students [to] log in to Examsoft before starting the exam," and that failure allowed her "access to her computer as prohibited by the exam instructions."

The Honor Court determined that the most appropriate sanction for these violations was denial of a degree. This was, in part, because a reprimand "was insufficient given Ms. Barton's violation of the Honor Code." In determining that denial of degree was the appropriate sanction, the Honor Court detailed its reasons:

(l) Barton accessed a Remedies outline after receiving a hard copy of her final exam;

(2) Barton did not log into ExamSoft as required, which, had she done so, would have blocked access to any other programs on her computer;

(3) Barton downloaded a Remedies outline;

(4) Barton used her internet browser to obtain Remedies flowcharts;

(5) Barton did not log into ExamSoft [when] she was instructed to do so, approximately four hours later than she should have;

(6) Barton "engaged in a course of misconduct lasting approximately four hours";

3

(7) Barton's account of the morning of her exam was "completely implausible"; and

(8) Barton's "conduct at the final exam" and "her account at her hearing" "demonstrated her disregard for academic integrity, fairness, equal academic opportunity, respect for others, and professionalism at the College."

The Honor Court found that Barton's "actions demonstrate[d] either an inability or an unwillingness to meet the ethical standards of the legal profession."

### B. Procedural History

Barton appealed the Honor Court's decision to the College of Law faculty on March 14, 2018. A hearing on the appeal was held on May 2, 2018. Barton was informed the next day that the faculty affirmed the Honor Court's decision. Barton then appealed to the Office of the Provost on July 9, 2018, but her appeal was denied because the Provost determined that decisions from the College of Law Honor Court were not appealable to that office. On December 22, 2018, Barton further appealed to the University of Idaho's President. On February 21, 2019, the President informed Barton that he declined to review the decision.

On March 27, 2019, Barton filed an appeal to the Idaho State Board of Education. The Board denied Barton's appeal on May 29, 2019, finding that the University substantially followed its procedures. Barton then filed a petition for judicial review with the Latah County district court, which was denied. Barton initially appealed the denial of her petition for judicial review to this Court, but the parties later stipulated to dismiss that appeal.

Separately, Barton sued the Board of Regents of the University of Idaho and Idaho State Board of Education (collectively "University"). Barton's complaint claimed nine causes of action, to wit: (1) breach of express contract; (2) breach of implied contract; (3) breach of implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) promissory estoppel; (6) specific performance; (7) negligence; (8) defamation per se; and (9) defamation. Each of these claims stemmed from the College of Law's decision to allow Barton "to reregister for classes after two honor [c]ode violations had been discovered," and its decision to deny Barton a law degree.

In early 2022, the parties were prepared to proceed to jury trial on Barton's complaint. However, Barton submitted a motion for leave to amend her complaint on May 27, 2022. The amended complaint sought to add two more defendants: (1) Jeffery Dodge, Associate Dean of Students at the College of Law, and (2) Katherine Macfarlane, a former professor at the College. The amended complaint also asserted additional causes of action, including violations of 42 U.S.C.

4

section 1983, retaliation, intentional infliction of emotional distress, and others. The district court denied Barton's motion to amend, finding the motion untimely, prejudicial, and futile.

The University later moved for summary judgment on all of Barton's claims. Barton cross-moved for summary judgment on counts 2, 3, 5, 6, 7, 8, and 9 of her complaint. The district court granted the University's motion and denied Barton's motion. Soon after, Barton moved for reconsideration, which was also denied. Barton timely appeals.

## II. ISSUES ON APPEAL

**1.** Did the district court err in denying Barton's motion to amend her complaint?

**2.** Did the district court err in granting the University's motion for summary judgment?

**3.** Did the district court err in denying Barton's motion for reconsideration?

**4.** Did the district court err in not deciding Barton's motion for a protective order?

**5.** Did the district court err in excluding expert testimony?

**6.** Did the district court err in awarding attorney fees and costs to the University?

**7.** Is either party entitled to costs or attorney fees on appeal?

## III. STANDARDS OF REVIEW

### A. Motion to Amend

Idaho Rule of Civil Procedure 15 governs amended and supplemental pleadings, and specifies "a party may amend its pleading only with the opposing party's written consent or the court's leave." I.R.C.P. 15(a)(2). "The Court reviews a district court's decision to grant or deny a motion to amend for abuse of discretion." *McCreery v. King*, 172 Idaho 598, 535 P.3d 574, 579 (2023) (quoting *DAFCO LLC v. Stewart Title Guar. Co.*, 156 Idaho 749, 753, 331 P.3d 491, 495 (2014). This Court also reviews a challenge to a district court's evidentiary rulings, which includes whether to exclude expert testimony, under an abuse of discretion standard. *Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 535 P.3d 1069, 1075 (2023) (citing *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50–51, 995 P.2d 816, 820–21 (2000)).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (emphasis in original).

"The boundaries of [a judge's] discretion require that '[t]he court should freely give leave when justice so requires.'" *McCreery*, 172 Idaho at __, 535 P.3d at 580 (quoting I.R.C.P. 15(a)(2)).

> Further, that discretion permits the trial court to consider "whether the amended pleading sets out a valid claim, whether the opposing party would be prejudiced by any undue delay, or whether the opposing party has an available defense to the newly added claim. The court may not, however, weigh the sufficiency of the evidence related to the additional claim."

*Id.* (quoting *Atwood v. Smith*, 143 Idaho 110, 115, 138 P.3d 310, 315 (2006)).

## B. Summary Judgment

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140, 456 P.3d 201, 209 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id.* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Id.* at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

## C. Motion for Reconsideration

When reviewing the grant or denial of a motion for reconsideration, the district court, as well as this Court, "must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Drakos v. Sandow*, 167 Idaho 159, 162–63, 468 P.3d 289, 292–93 (2020) (quoting *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 524, 461 P.3d 798, 806 (2020)). Thus, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.* (citing *Ciccarello v. Davies*, 166 Idaho 153, 159, 456 P.3d 519, 525 (2019)).

IV. ANALYSIS

Before delving into the issues Barton raises on appeal, the University maintains that, to the extent that Barton seeks to challenge the Honor Court's findings, her arguments are barred by principles of res judicata. Indeed, as the University alleges, Barton separately challenged the Honor Court's findings in a petition for judicial review, which was resolved in the University's favor. Although Barton initially appealed that decision, she later stipulated to dismiss the appeal. Barton separately admitted to violating the honor code. In her reply brief here, Barton argues that res judicata does not apply because the district court did not examine the parties' relationship or implied contract on judicial review. That may be true, but the University's argument does not suggest Barton cannot challenge the underlying merits of her contract claims; rather, the University proposes that Barton is barred from arguing she did not commit academic misconduct. We agree with the University's position.

Because the district court's decision denying Barton's petition for judicial review was a final judgment, and because Barton stipulated to dismiss her appeal from that decision, collateral estoppel bars Barton from further challenging the Honor Court's findings or arguing on appeal that she did not violate the honor code. *See Elsaesser v. Riverside Farms, Inc.*, 170 Idaho 502, 509, 513 P.3d 438, 445 (2022) (collateral estoppel "bars relitigation of an adjudicated issue").

A. **The district court did not abuse its discretion in denying Barton's motion to amend her complaint.**

Barton maintains that the "district court abused its discretion when denying Barton's motion to amend her breach of contract claims by not allowing her to conform the evidence and raise issues." Barton's argument on appeal focuses on the district court's failure to articulate its reasoning for concluding that she did not have a valid breach of contract claim when, according to Barton, her breach of contract claim was filed before the statute of limitations had run, and her amended complaint related back to the original complaint. Barton's argument does not, however, otherwise challenge the district court's decision denying her motion to add new claims or new parties. For the reasons below, we affirm the district court's decision.

Idaho Rule of Civil Procedure 15(a)(2) permits a party to amend a pleading after a responsive pleading is served "only with the opposing party's written consent or the court's leave." I.R.C.P. 15(a)(2). And while the "court should freely give leave when justice so requires[,]" that "liberality may be constrained in the face of bad faith or dilatory conduct by the moving party,

7

prejudice to the opposing party, or the claim to be added being invalid." *Pandrea v. Barrett*, 160 Idaho 165, 175, 369 P.3d 943, 953 (2016). Even more, a court is not "required to permit the amendment of a complaint where such amendment would be futile." *Eagle Equity Fund, LLC v. TitleOne Corp.*, 161 Idaho 355, 362, 386 P.3d 496, 503 (2016) (citing *Carl H. Christensen Fam. Trust v. Christensen*, 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999)).

Barton moved for leave to amend on April 27, 2022, and later amended that motion on May 27, 2022. But as mentioned, Barton only argues on appeal that the district court abused its discretion in denying her leave to amend the breach of contract claims she raised. Nothing in Barton's proposed amended complaint, submitted with either her original motion for leave to amend or her amended motion for leave to amend, suggests that she sought to amend her breach of contract claims. To the contrary, Barton's claims for breach of express contract and breach of implied contract restate, verbatim, the same allegations in her amended complaint as were stated in the original complaint. When Barton's motion for leave to amend was denied, her original contract claims remained, until the district court later granted summary judgment to the University.

At various points in her briefing, Barton cites the district court's decision granting summary judgment to the University as support for her claim that the district court abused its discretion in denying her motion to amend. Barton's argument appears to equate the district court's decision granting summary judgment to the University with the district court's denying her motion to amend the breach of contract claim. But Barton never articulates the proposed amendments she wanted to make to her breach of contract claim. Again, there was no change to either her express or implied breach of contract claims from her original complaint to the proposed amended complaint.

As a result, the district court did not analyze Barton's breach of contract claim in its decision denying her motion to amend. Instead, the court set out the changes from Barton's original complaint and articulated why it would not grant Barton leave to make those changes. Those reasons included: (1) timeliness; (2) futility; (3) inadequacy of proof of equitable estoppel or fraud; and (4) punitive damages were unwarranted. While Barton makes some reference to the district court's timeliness finding, her analysis in that regard is tied to the district court's decision "not allowing Barton to amend her breach of contract claims. . . ."

Barton challenges none of the district court's bases for its decision on appeal. Her failure to adequately challenge the grounds on which the district court denied her motion to amend

8

preempts her argument on appeal; thus, her argument is waived. *See Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013) (quoting *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 307 P.3d 176 (2013)) ("This Court has held that when a district court grants summary judgment on multiple independent grounds, the appellant must successfully challenge all of those grounds to prevail on appeal."). The district court's decision to deny Barton's motion to amend is affirmed.

**B.    The district court did not err in granting the University's motion for summary judgment.**

Barton argues that the district court erred in granting summary judgment to the University. Even so, in her opening brief, Barton challenges only the district court's decision to grant summary judgment on her implied covenant of good faith and fair dealing claim and her promissory estoppel claim. Barton makes no mention of the remaining seven claims in her complaint: (1) breach of express contract; (2) breach of implied contract; (3) unjust enrichment; (4) specific performance; (5) negligence; (6) defamation per se; or (7) defamation. "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *see* I.A.P. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). As a result, we consider only the two claims that Barton preserved through argument in her opening brief.

*1.  Implied covenant of good faith and fair dealing*

Barton argues that the district court "abused its discretion in finding that the University acted in good faith." Barton further alleges that the district court "erred in finding that Idaho Law does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing." The University counters that Barton, by her own admission, violated the terms of her implied contract, received the process required by those terms, and received a punishment permitted under those terms. Therefore, it is the University's position that the district court did not err. We agree.

First, despite her claim to the contrary, the district court made no finding that Idaho law does not recognize a cause of action for breach of the covenant of good faith and fair dealing.

Indeed, in the district court's decision granting summary judgment to the University, the court addressed, at length, Barton's claim for breach of implied covenant of good faith and fair dealing. The court explained, in part, that

> the University only denied Barton a law degree after she was found to have violated the Honor Code. The Honor Code specifically states that "[d]enial of the award of the Juris Doctor degree, whether or not the law student may have otherwise satisfied the requirements for the degree" is a possible sanction for an Honor Code violation. . . . Thus, the University did not breach the covenant of good faith and fair dealing by denying Barton a law degree after she was found to have violated the Honor Code.

(Internal citation omitted).

"The duty of good faith and fair dealing is implied in every contract." *Indep. Sch. Dist. of Boise City v. Harris Fam. Ltd. P'ship*, 150 Idaho 583, 589, 249 P.3d 382, 388 (2011) (quoting *Luzar v. Western Sur. Co.*, 107 Idaho 693, 696, 692 P.2d 337, 340 (1984)). It "is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions." *Id.* (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 243, 108 P.3d 380, 390 (2005)). "An action by one party that violates, qualifies or significantly impairs any benefit or right of the other party . . . violates the covenant." *Id*.

Barton maintains that the University violated this implied covenant because the University failed to "utilize the Honor Code on matters they kept outside of the hearing records." Barton argues that the "[d]istrict [c]ourt erred by not considering that the University disciplined Barton outside of the University's disciplinary record in violation of the University's guidelines and statutory authority."

There is nothing in Barton's briefing or in the arguments she raised below to show an implied contract existed between herself and the University, nor is there any evidence in the record to suggest that, if such a contract existed, the University did not perform, in good faith, the obligations it had to Barton.

To the extent that Barton claims the University's honor code constituted an implied contract, Barton has failed to articulate why the University did not perform its obligation in good faith under the terms of that code, except to argue that the outcome from the Honor Court proceedings for violating the honor code was undesirable. Even so, the covenant of good faith and fair dealing does not require the University to grant Barton a law degree under *any* circumstance, including that the College of Law authorized her to return to school and complete her final

10

semester. "The covenant requires that the parties perform in good faith the obligations imposed by their agreement, and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract." *River Range, LLC v. Citadel Storage, LLC*, 166 Idaho 592, 603, 462 P.3d 120, 131 (2020) (cleaned up).[3] The honor code prohibits students from "giv[ing] or receiv[ing] aid of any nature from any source that is not expressly authorized by the instructor." The honor code also identifies, as a potential sanction, the "[d]enial of the award of Juris Doctor degree, whether or not the law student may have otherwise satisfied the requirements for the degree." That Barton disagrees with the sanction the Honor Court imposed does not suggest that the University breached an implied contract or the covenant of good faith and fair dealing.

The district court's decision acknowledged that the University's honor code set forth the consequences for not satisfying degree requirements and concluded that Barton's honor code violations were adjudicated, and she was afforded proper due process. Thus, we hold that Barton has failed to raise a genuine issue of material fact that the University violated its duty of good faith and fair dealing. For these reasons, the district court's decision is affirmed.

### 2. *Promissory estoppel*

Barton next claims that the district court erred when it granted the University summary judgment against Barton's promissory estoppel claim. Barton argues that the district court "entirely ignores that not only was Barton entitled to due process[,] the University was also obligated to uphold its part of the contract." The University challenges this argument by explaining that Barton never offered evidence to demonstrate that the University promised her it would not pursue

---

[3] This parenthetical "(cleaned up)" is used to give this opinion better readability. As one author has noted, "[a] passage can quickly become cluttered with brackets, ellipses, and quotation marks that distract the reader's eyes and attention, while at the same time its citation becomes an unwieldy mess packed with case cites and parenthetical information that tests the reader's ability to remember the point that the author was trying to make by using the quotation in the first place." Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143, 145 (2017). We use this parenthetical to signal that the author "has removed extraneous, non-substantive material like brackets, quotation marks, ellipses, footnote reference numbers, and internal citations; . . . the alterations were made solely to enhance readability and that the quotation otherwise faithfully reproduces the quoted text." *Id.* at 154. The Court uses the parenthetical for this purpose. Use of this parenthetical is becoming more common in legal writing submitted to the Court and we take this opportunity to note that it is not to be used as a means convey something different than the original quote would convey, but as a shorthand way to note that brackets, ellipses and the like are dispensed with to aid in the opinion's readability. If the reader has uncertainty about the quotation in its original context, she or he is encouraged to go to the original source for that information.

disciplinary action if she re-enrolled. To the extent that Barton inferred such a promise, the University maintains her belief was unreasonable.

Barton's complaint alleged the following as it pertains to her promissory estoppel claim:

69. Defendants made a promise to Ms. Barton that she would receive a Juris Doctorate degree from the University of Idaho if all requirements for graduation were met, which Defendants should have reasonably expected to induce action on the part of Ms. Barton.

70. Plaintiff's reliance on Defendant's promise was reasonable. But although plaintiff met all requirements of graduation, she was denied a degree.

71. Plaintiff relied on Defendant's promise to Plaintiff's detriment resulting in damages including but are not limited to lost wages, past and future, cost of tuition, living expenses, loss of degree, court costs, and attorneys' fees.

72. Defendants should be estopped from denying Ms. Barton's Juris Doctorate.

Under Idaho law, a plaintiff claiming promissory estoppel must prove: "(1) reliance upon a specific promise; (2) substantial economic loss to the promisee as a result of such reliance; (3) the loss to the promisee was or should have been foreseeable by the promisor; and (4) the promisee's reliance on the promise must have been reasonable." *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 795, 435 P.3d 1106, 1115 (2019). The plaintiff must also show that "injustice can be avoided only by enforcement of the promise." *Id.* (citation omitted).

In the order granting summary judgment for the University, the district court dismissed Barton's claim "because the University never promised to award Barton a degree and not pursue adjudication of the alleged Honor Code violations if she reenrolled after her medical withdrawal." The court expanded:

Barton fails to appreciate that she also made a promise to uphold the Honor Code. The Honor Code clearly states that students have an obligation "to refrain from misconduct. . . ." Honor Code violations include "improper conduct on exams," which is the conduct Barton was found to have engaged in and which Barton has admitted to. . . . Thus, having violated the Honor Code, it was within the discretion of the Honor Court to impose a wide range of sanctions including "[d]enial of the award of the Juris Doctor degree, whether or not the law student may have otherwise satisfied the requirements for the degree." Barton's claim that the University "made a promise to [her] that she would receive a Juris Doctorate degree from the University of Idaho if all requirements for graduation were met," fails to acknowledge the express language in the University's College of Law Honor Code and Mutual Responsibility statements as outlined above.

Further, Barton has not presented any evidence to support her claim that, upon reenrollment after her medical withdrawal, the University promised her that she would be awarded a degree despite the pending Honor Code allegations. To the

12

contrary, the record shows that prior to her reenrollment, Barton was on notice that she was being charged with Honor Code violations. It is unclear why Barton believed that the alleged Honor Code violations would not be adjudicated if she reenrolled at the University. There is no evidence to suggest the University promised to withdraw the alleged violations if Barton reenrolled or did anything other than allow Barton to reenroll and then provide her due process in adjudicating the violations.

(Internal citations omitted).

On appeal, Barton points to no facts in the record raising a genuine dispute of material fact that the University promised she would receive a degree. Instead, her focus is on whether she received due process. The claim in Barton's complaint that the University promised her "she would receive a Juris Doctorate degree from the University of Idaho if all requirements for graduation were met," disregards the plain text of the honor code that degree denial is available as a possible sanction "whether or not the law student may have otherwise satisfied the requirements for the degree."

Barton also maintains that she "was not heard on matters affecting her well-being" and was "not before an impartial deciding body." This argument has little relevance to the elements of promissory estoppel or the district court's decision to grant summary judgment on her claim to the University. It is also important to note that the argument is not factually supported. Barton exhausted her administrative remedies and elected not to pursue an appeal of the district court's denial of her petition for judicial review. While the outcome was unfavorable to her, Barton received due process. *See Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 512, 148 P.3d 1247, 1258 (2006) ("Procedural due process requires: 'some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard.'") (quoting *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999)).

Barton fails to point to any promise the University made to her. Thus, we hold that Barton failed to raise a genuine issue of material fact sufficient to preclude summary judgment on her promissory estoppel claim.

**C.    The district court did not err in denying Barton's motion for reconsideration.**

Despite asserting, as an issue on appeal, that the district court erred in denying her motion for reconsideration, Barton does not provide any argument or authority for this issue in her opening

13

brief. As articulated above, even when a party sets forth an issue on appeal, "if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *see* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). With no argument to evaluate, the district court's decision to deny Barton's motion for reconsideration is affirmed.

**D.    The district court implicitly denied Barton's motion for a protective order.**

Barton next argues that the district court did not provide any standard for its reasoning or articulate that it knew the decision to grant or deny her "motion for protection"[4] was a discretionary decision. Barton thus contends that it is unclear whether the district court acted within the outer bounds of its discretion. We disagree. "Control of discovery is within the discretion of the trial court." *McCann v. McCann*, 152 Idaho 809, 821, 275 P.3d 824, 836 (2012) (quoting *Jen–Rath Co. v. Kit Mfg. Co.*, 137 Idaho 330, 336, 48 P.3d 659, 665 (2002)). "The decision whether or not to grant a protective order is discretionary and will not be overturned absent an abuse of that discretion." *Id.* (citing *Selkirk Seed Co. v. Forney*, 134 Idaho 98, 104, 996 P.2d 798, 804 (2000)); *see* I.R.C.P. 26(c).

A party who requests a protective order to limit discovery must show good cause. Idaho Rule of Civil Procedure 26(a) permits discovery made by: "(1) deposition upon oral examination or written questions; (2) written interrogatories; (3) production of documents, electronically stored information or tangible things; (4) entry upon land or other property for inspection or other purposes; (5) physical and mental examinations; and (6) requests for admission." The frequency of these methods is not limited unless a court order under Rule 26(c) limits it. I.R.C.P. 26(a). That Rule states:

> A party . . . may move for a protective order in the court where the action is pending, or as an alternative on matters relating to a deposition, in the court where the deposition will be taken . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

---

[4] Barton calls her motion a "Motion for Protection." What she was seeking was a motion for a protective order under Idaho Rule of Civil Procedure 26(c). When quoting Barton's motion we will use her nomenclature; otherwise, we will use the term for such a motion set forth in the Rule.

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Barton made several requests for a protective order. The first request was included in her memorandum in opposition to the University's response to Barton's motion for summary judgment. Barton included what she called a "motion for protection." That motion, filed November 3, 2022, asked the district court to protect all communications with Adam Duerk[5] and prescribe a discovery method other than the one selected by the University. This motion alleged that "it would be oppressive, embarrassing, and a burden on Barton to allow Defendant's discovery into these communications in the manner or method in which they have requested." For the same reasons, Barton also requested that all communication with Julie Reynolds[6] be protected.

One week later, at a hearing on the parties' cross-motions for summary judgment, the district court asked Barton about her "motion for protection." Both the district court and counsel for the University expressed confusion about what Barton filed and whether it constituted a motion for a protection order or was merely a request not to use certain documents in certain ways.

> THE COURT: . . . Ms. Barton, the concern is that -- it seems like you are filing a motion for protection. You didn't actually file a motion, but it is in your memorandum, and that especially caught my attention because I wondered if that meant that you didn't want to go forward with a motion for summary judgment without getting that issue resolved, or you were concerned that we couldn't go

---

[5] Duerk is a former U.S. Attorney in the State of Montana and Barton's mentor and friend.

[6] Reynolds is Barton's therapist.

forward with the motion for summary judgment unless Mr. Stromberg's clients agreed to what you asked for. So maybe you can give me some context for that.

[Discussion between Barton and the court about self-representation]

THE COURT: . . . The Defendants wanted to get particular information that you felt uncomfortable providing to them, and that's why you are asking for some protection from that.

. . .

MS. BARTON: What I'm really looking for here is I want Defendants to know the significance of my past and to have testimony from my therapist saying, you know, this is what she has overcome. This is a different person. This is someone who has rehabilitated herself. This is new information, and something that we should be taking into account.

*And so I guess the reason why I brought these issues and labeled it as a motion for protection is so that I can bring this to your attention so that we can have this conversation*, because I have tried to talk to opposing Counsel. Mr. Rauch[7] has tried to talk to opposing Counsel about these issues. I am not really sure where they left off with the issues. I just know that it's in my hands now, and I want to talk about this.

THE COURT: . . . Okay. So we are set for the 30th of November at 2:00, *and if, okay, you are going to actually file a motion for protection order you need to file that right away* and send it to Mr. Stromberg so that we can have that discussion before we move to the merits of the motion for summary judgment, okay?

(Emphasis added).

Following that hearing, Barton filed another "motion for protection." Barton's motion reasserted the same requests, supported by the same rationale, as she had included in her earlier memorandum in opposition to summary judgment. She again requested communications with Duerk and Reynolds be protected. At the next hearing, on November 30, the district court began with the "motion for protection order." As part of the discussion, the court again questioned Barton:

[The Court]: So going back to this protection --motion for protection order, getting some information or testimony from Ms. Reynolds, you want to protect that. At the same time the other side has an opportunity. Has, you know, really a right to have access to that if you are going to be using it to present your case.

MS. BARTON: Your Honor, I understand that the Defendants have a right to information. However, they are claiming that Julie Reynolds is privileged under the physician privilege. She is not a physician. She's a mental health counselor, and so those privileges are different. And so, you know, the physician privilege says if it

---

[7] Mr. Rauch had represented Barton previously.

16

relates to a claim or a defense, then the Defendants are entitled to that information. Now, when it is a mental health counselor there's exceptions to entering that information into a civil suit, and those don't apply here.

. . .

THE COURT: You know, if you are going to make an argument that is based on Ms. Reynolds as an expert and how it's affected your mental and physical health, then they get to examine that, okay. They need to -- they get to challenge her opinion. I'm not, you know, taking their side. I'm just trying to be very neutral about it. That's just how it works. Anytime you make a claim against somebody or an institution or a corporation, they get to defend themselves. And the Plaintiff doesn't necessarily like that, but that's kind of how the rules are set up, unless it is privileged. But you've released the -- you signed a release, and that's a waiver of the privilege. Now, you can revoke that. I'm not giving you legal advice. I'm just saying this is a complicated thing, and I know that you are self-represented. I know you went to law school but, I mean, these are complicated issues.

At the end of the hearing, the district court explained it would "consider the motion for protection order and, you know, we'll see where it all ends up."

Later, the district court issued its decision, granting the University's motion for summary judgment and denying Barton's motion for summary judgment. The district court's decision did not expressly grant or deny Barton's motion for a protective order. That said, the district court's summary judgment decision resolved, in the University's favor, all of Barton's causes of action. As a result, any pending and outstanding motions were implicitly denied, rendering Barton's motion for a protective order moot. As a result, there is no decision for this Court to review. *See Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 543, 498 P.3d 713, 723 (2021) (when the district court granted summary judgment, a pending motion to compel was then moot, which left the Court with nothing to review).

Barton's motion for a protective order centered on her concern that the University would obtain and use against her information that Barton believed was oppressive, embarrassing, and burdensome. The case resolved without the University obtaining the information she sought to protect. As a result, we hold that Barton's motion was implicitly denied, and this issue on appeal is moot.

E.    **The district court was not required to decide whether Barton's expert witnesses could testify at trial because the case was resolved on summary judgment.**

Barton next points to the district court's summary judgment decision to assert that the court failed to identify the standard for its reasoning in excluding her expert witnesses. Barton claims

17

that this Court cannot review whether the anticipated testimony from her experts would have precluded summary judgment.

Barton filed expert witness disclosures for two witnesses: Julia Reynolds and Joshua Michel. Both experts were disclosed on September 2, 2022, the latest either party could disclose expert witnesses, pursuant to the court's scheduling order. Barton disclosed Reynolds to "testify to common reactions to trauma" and "the effect of these symptoms on Barton during her time in law school[.]" Reynolds was also expected to testify about "Barton's significant progress during time in counseling[.]" Barton disclosed Michel to testify about her "laptop Internet history and document metadata . . . utilized as exhibits for the [H]onor [C]ourt hearing." Michel was expected to testify to the contents of Barton's laptop on May 4, 2017, during the Remedies examination. Both Barton's disclosure of Reynolds and her disclosure of Michel addressed the expert witness testimony she intended to elicit *at trial*. Barton did not separately provide affidavits from either Reynolds or Michel in support of her motion for summary judgment or to resist the University's motion for summary judgment.

First, Barton's expert witness disclosure is not expert testimony. *See Dlouhy v. Kootenai Hosp. Dist.*, 167 Idaho 639, 649, 474 P.3d 711, 721 (2020) ("Expert witness disclosures are written by the parties' attorneys. While they may provide a preview of the disclosed expert witness' testimony, they are not sworn statements made by the expert themselves."); *Ciccarello v. Davies*, 166 Idaho 153, 161, 456 P.3d 519, 527 (2019) (holding that an expert witness disclosure in a legal malpractice case is not the same as a sworn declaration or affidavit). Consequently, the district court did not abuse its discretion by not addressing Barton's expert witness disclosures in its summary judgment decision because the expert witness disclosures had no relevance to the motions for summary judgment.

Second, neither the contents of Barton's laptop nor her treatment progress were material facts for summary judgment. "A material fact is one upon which the outcome of the case may be different." *Johnson v. N. Idaho Coll.*, 153 Idaho 58, 67, 278 P.3d 928, 937 (2012) (quoting *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998)). Barton's complaint does not assert any factual allegation to challenge the claim that she committed academic misconduct on her Remedies exam. And, as we articulated above, Barton is barred by collateral estoppel from challenging the conclusion she committed academic misconduct.

18

Since the district court granted summary judgment on each claim to the University, there was no trial for which Barton's expert witnesses would testify. Because all of Barton's claims were resolved on summary judgment, whether her expert witnesses could testify at trial was irrelevant. As such, this issue on appeal is moot.

**F.     The district court did not abuse its discretion in awarding attorney fees and costs to the University.**

A district court's decision to award fees is reviewed for an abuse of discretion. *See S Bar Ranch v. Elmore Cnty.*, 170 Idaho 282, 312, 510 P.3d 635, 665 (2022) (citing *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012)). Barton's attorney fee argument appears to argue that the University is not entitled to attorney fees *on appeal*, despite noting, as a separate issue on appeal, that the district court erred in awarding fees and costs to the University below. "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Inama v. Boise Cnty. ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003)). Without argument or the authority to support her claim, we conclude that the district court did not abuse its discretion in awarding attorney fees and costs to the University.

**G.     The University is entitled to attorney fees and costs on appeal.**

Barton does not argue for attorney fees or costs on appeal in her opening brief, though she does make a brief request for costs under Idaho Appellate Rule 40 in her reply brief. The University requests attorney fees under Idaho Code sections 12-117 and 12-121. We decline to consider Barton's request for costs because she is not the prevailing party and because she requested costs for the first time in her reply brief. *See Midtown Ventures, LLC v. Capone as Tr. to Thomas & Teresa Capone Living Tr.*, ___ Idaho ___, 539 P.3d 992, 1000 (2023) (quoting *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)) ("this Court will not consider arguments raised for the first time in the appellant's reply brief.").

As the prevailing party, the University is entitled to attorney fees and costs. That said, we must first determine whether the University is entitled to fees under Idaho Code section 12-117 or section 12-121. Idaho Code Section 12-117 authorizes the Court to award attorney fees in proceedings between persons and state agencies or political subdivisions, when a non-prevailing party acts without a reasonable legal or factual basis. I.C. § 12-117. Likewise, attorney fees may

be awarded to a prevailing party under Idaho Code section 12-121 if the proceeding was brought, pursued, or defended frivolously, unreasonably or without foundation. I.C. § 12-121.

We begin by noting that the University is not a "state agency" under Idaho Code section 12-117. Idaho Code section 12-117 provides:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a *state agency* or a political subdivision and a person, . . . the court hearing the proceeding . . . shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

(Emphasis added). Section 12-117 refers to Idaho Code section 67-5201(3) to define an agency as

> each state board, commission, department or officer authorized by law to make rules or to determine contested cases, but does not include the legislative or judicial branches, executive officers listed in section 1, article IV of the constitution of the state of Idaho in the exercise of powers derived directly and exclusively from the constitution, the state militia or the state board of correction.

While the University is a constitutional entity, it is not authorized by law to make rules or determine contested cases. Thus, we decline to award attorney fees under section 12-117; instead, the University is entitled to attorney fees under Idaho Code section 12-121. Barton has spent seven years litigating this case through multiple varied avenues. She has been unsuccessful in every attempt, and yet she persists. Her arguments below lacked merit, her briefing on appeal abandoned issues, and she failed to provide a sound argument in support of the issues addressed. This appeal was also pursued despite Barton's own acknowledgment that she committed academic misconduct and stipulated to dismiss the appeal denying her petition for judicial review in that regard. As a result, we conclude that Barton's appeal was pursued frivolously, unreasonably, and without foundation. Accordingly, we award the University attorney fees pursuant to section 12-121.

## VI. CONCLUSION

For the reasons above, the district court's decision is affirmed. The University is entitled to attorney fees and costs on appeal.

Justices MOELLER, MEYER and Justices *pro tem* BURDICK and CHRISTENSEN, CONCUR.